**Elizabeth R. TULLEY**

v.

**ETHYL CORPORATION, et al.**

**Civ. A. No. 83–1260–A.**

United States District Court, M.D. Louisiana.

Nov. 6, 1987.

Roger M. Fritchie, Durrett, Hardin, Hunter, Dameron & Fritchie, Baton Rouge, La., for plaintiff.

Patrick R. Vance, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., for defendants.

## MEMORANDUM OPINION

JOHN V. PARKER, Chief Judge.

This action requires the court to examine § 205 of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1055, so as to divine the Congressional intent relative to the annuity due the surviving spouse of an employee who was eligible to take early retirement but continued working and died before he completed retirement. Both plaintiff and defendant have filed motions for summary judgment and all facts necessary to resolution of the issues have been stipulated by the parties. The court has had the benefit of extensive and multiple briefs, as well as oral argument by both sides. The following facts have been stipulated:

1. Ethyl is a Virginia corporation that has an office and transacts business in the Middle District of Louisiana.

2. The Plan is an employee pension benefit plan as defined in section 3(2) of the Employee Retirement Income Security Act of 1974 (ERISA).

3. The plaintiff, Elizabeth R. Tulley, is the widow of Frederick T. Tulley. Mr. Tulley was employed by Ethyl at its Baton Rouge, Louisiana, facility.

4. Ethyl is the sponsor of the Plan and serves as Plan Administrator.

5. The Plan provides retirement and certain other benefits to, or on behalf of, eligible employees of Ethyl and its designated affiliates.

6. The Internal Revenue Service has issued determination letters to the effect that written Plan documents and supporting information supplied by Ethyl indicate that the features of the Plan conform with the requirements of Internal Revenue Code Section 401(a) and that the Plan is a qualified plan for purposes of the Internal Revenue Code subject to actual operation of the Plan. Although plaintiff stipulates this fact, plaintiff objects to its relevance.

7. The Plan provided that a married participant would receive his retirement benefit under the 50% Contingent Annuitant Option unless he elected an alternate form of benefit. The 50% Contin-

gent Annuitant Option provided a benefit to the participant for his lifetime and upon his death a continuation of the benefit of the Contingent Annuitant Option is equal to one-half (½) of the participant's benefit.

8. The 50% Contingent Annuitant Option contains a five-year certain feature whereby payments at 100% of the participant's benefit are guaranteed for sixty (60) months. If the participant retired and died before receiving 60 monthly payments, the Plan provided that the surviving spouse would receive benefits at the participant's (100%) level for the remainder of the 60–month period. The surviving spouse's monthly benefit would then reduce to 50% of the participant's monthly benefit payable for the life of the surviving spouse.

9. The Plan also provided alternate forms of retirement benefit including a 100% Contingent Annuitant Option. Under the option, the benefit otherwise payable to a participant is actuarially adjusted so that the benefit payment made to the surviving spouse during the lifetime of the surviving spouse, is the same as the retirement benefit payment to the participant during his lifetime. Under this option, payments are guaranteed for sixty (60) months.

10. The Plan also provides a pre-retirement death benefit for a surviving spouse of a participant who has reached early retirement age. The Plan provides that the monthly allowance "... shall be equal to the amount that would have been payable to the Contingent Annuitant (in this case the Surviving Spouse) had the member elected the 50% Contingent Annuitant Option and retired on the first day of the month following his date of death. Notwithstanding the above, such allowance shall be increased on an Actuarially Equivalent basis to allow for the elimination of the sixty (60) monthly payments guaranteed and otherwise payable under item 2 of Section B of this Article VII." See Article VII, Section A, paragraph 2 of this Plan.

11. At all times pertinent prior to his death, Mr. Tulley was employed by Ethyl at its facility in Baton Rouge, Louisiana.

12. Mr. Tulley died prior to the effective date of his retirement, but after he had reached an age which made him eligible for early retirement.

13. In August 1982, Mr. Tulley began a disability leave of absence. Mr. Tulley thereafter was hospitalized.

14. Certain Ethyl employees advised that the largest surviving spouse's benefit could be paid to the plaintiff under the Plan's 100% Contingent Annuity Option and that that form of benefit would be payable only if he retired.

15. On April 20, 1983, Mr. Tulley elected to receive his retirement benefit under the Plan's 100% Contingent Annuitant Option. Mr. Tulley would have received $741 per month during his lifetime. Upon Mr. Tulley's death, the plaintiff would have received a lifetime benefit of $741 per month if she survived him. Sixty payments of that monthly benefit would have been paid in all events.

16. Mr. Tulley died on April 30, 1983, prior to the effective retirement date and while an employee of Ethyl.

17. Since Mr. Tulley's death, the plaintiff has received a monthly payment which was computed by Ethyl in the following manner.

 a. Mr. Tulley's benefit accrued under the Plan as of the "deemed retirement date" was converted on an actuarially equivalent basis, into a single life annuity on Mr. Tulley's life (with no 60–month payment guarantee).

 b. In Mr. Tulley's case, had he retired on May 1, 1983, and elected to receive his retirement benefit as a single life annuity, his hypothetical post-retirement benefit would have been $996.80 per month (assuming the Plan offered a single life annuity form of payment). In this subparagraph and in the following subparagraphs, the word "hypothetical" is used to indicate a benefit which is not actually payable under the terms of the Plan, but which is calculated as an interim step to the determi-

nation of a benefit which is claimed by a party to be actually payable under the plan.

c. Ethyl converted the hypothetical benefit calculated in "b" as a single life annuity to a hypothetical 50% joint and survivor annuity benefit without the sixty payments guaranteed, using actuarial conversion factors. The hypothetical benefit payable to Mr. and Mrs. Tulley jointly under such 50% joint and survivor annuity would have been $851.27 per month.

d. Ethyl calculated the pre-retirement death benefit payable to Mrs. Tulley as one-half of the hypothetical benefit that would have been payable to Mr. and Mrs. Tulley during their joint lives under the 50% joint and survivor annuity described in "c." Pursuant to Ethyl's calculation, the benefit payable to the plaintiff, as of May 1, 1983, was $425.64 per month.

18. Count III of the Complaint contests whether the foregoing method of calculation is consistent with the terms of the Plan.

19. By Plan Amendment, benefits in pay status on January 4, 1984, received a cost-of-living increase. Pursuant to the amendment, Mrs. Tulley is entitled to a 25% increase in benefit payments. The fact that Mrs. Tulley is entitled to and has received a cost-of-living increase is not in dispute.

20. The current monthly benefit being received by Mrs. Tulley is $532.05, a 25% increase over the $425.64 amount received prior to Plan Amendment.

Essentially, plaintiff argues that because Mr. Tulley had elected prior to his death, to receive his retirement benefit under the Plan's 100% Contingent Annuitant Option, the provisions of § 205(c)(2) require that Mrs. Tulley receive payments which "are not less than the payments which would have been made under the joint annuity" during the joint lives of Mr. and Mrs. Tul-

ley, had Mr. Tulley retired and then died. Specifically, plaintiff claims that she is entitled to receive a survivor's annuity of $741 per month with 60 payments in that amount guaranteed even if she should not survive for that period, in accordance with the terms of the Plan. Alternatively, plaintiff argues that Mrs. Tulley should be paid at least the benefits which would have been payable under the Plan's 50% Contingent Annuitant Option including the 5-year certain feature which would have guaranteed $843 per month for a minimum of 60 months and $421.50 per month thereafter. Finally, plaintiff also argues that, in any event, Mrs. Tulley's benefits have not been properly calculated in accordance with the provisions of the Plan itself because her annuity makes no provision for an increase in its value because the 5-year certain payment feature was eliminated.

Ethyl, on the other hand, argues that the statute mandates an entirely different result and that it has calculated Mrs. Tulley's benefits in precise accord with both the statute and the terms of the Plan itself. Specifically, Ethyl insists that we are dealing here with a **pre-retirement death benefit,** not a retirement benefit, that different rules apply and that Mr. Tulley's election of a **retirement benefit** prior to his death, has no effect upon payment of a **death benefit** specified in the Plan.

Each side asserts that the statute plainly mandates the result advocated.

The entirety of § 205[1] must be examined in order to ascertain the Congressional intent and purpose. The general purpose of ERISA was to bring order and uniformity to employee benefit plans, to provide remedies for participants and their beneficiaries in federal court and to require accountability and actuarial soundness. See Title 1, Pub.L. 93–406, 29 U.S.C. § 1001(b) and (c). As Ethyl points out repeatedly, the statute establishes **minimum benefits** only.

---

**1.** We consider here only Section 205 as enacted by Pub.L. 93–406, September 2, 1974 because Mr. Tulley died on April 30, 1983, prior to the 1984 amendment by Pub.L. 98–397, August 23, 1984 and the amendment by Pub.L. 99–514,

October 22, 1986. The court has examined the amendments and determines that they shed no light on the intent of the Congress as to the 1974 law.

The initial rule of all statutory construction is that courts will simply apply the provisions when the words used are clear and unambiguous, without resorting to legislative history or other material de hors the statute itself. *City of Madison, Mississippi v. Bear Creek Water Ass'n., Inc.,* 816 F.2d 1057 (5th Cir.1987). Portions, at least of this statute are clear.

Subsection (a) of § 205 provides:

If a pension plan provides for the payment of benefits in the form of an annuity, such plan shall provide for the payment of annuity benefits in a form having the effect of a qualified joint and survivor annuity.

Subsection (g)(3) defines a "qualified joint and survivor and annuity" as "an annuity for the life of the participant with a survivor annuity for the life of his spouse" and further stipulates that the survivor annuity (the annuity payable to the survivor) must be not less than one-half or greater than the amount of the annuity which is payable during the joint portion of the annuity. Further, subsection (g)(3) requires that the joint and survivor annuity must be the actuarial equivalent of a single annuity for the life of the plan participant. Although the term "actuarial equivalent" is not defined in the statute, it is a common term and it is undisputed that it means that the total payments under the joint and survivor annuity must be equal to the total payments that would have been made on a single annuity, considering mortality tables, interest and other actuarial factors.

Under subsection (a) then, a pension plan which offers an annuity as a pension benefit must provide benefits in the form of a joint and survivor annuity which must pay the survivor at least one-half and not more than 100% of the amount payable after retirement and during the joint lives of the participant and his spouse. In addition, the joint and survivor annuity must pay the same total benefits as would have been payable on a single life annuity on the life of the participant.

Subsection (a) therefore clearly mandates protection for the participant's spouse in the matter of pension benefits and shows the intent of the Congress to provide minimum protection for the spouse of a participant whose benefits have vested.

Subsection (b) of § 205 provides:

(b) In the case of a plan which provides for the payment of benefits before the normal retirement age as defined in section 3(24), the plan is not required to provide for the payment of annuity benefits in a form having the effect of a qualified joint and survivor annuity during the period beginning on the date on which the employee enters into the plan as a participant and ending on the later of—

(1) the date the employee reaches the earliest retirement age, or

(2) the first day of the 120th month beginning before the date on which the employee reaches normal retirement age.

Subsection (b) refers only to pension plans which permit early retirement, that is to say, retirement before the "normal" retirement age specified in the plan. This provision recognizes that benefits may vest in a participant long before he reaches early retirement age and it provides that joint and survivor annuity benefits shall not be required by the plan until the employee reaches the earliest age at which he could retire or reaches ten years before normal retirement age, which ever is later. Although the wording of this subsection is awkward, its meaning is plain.

Subsection (c) of § 205 becomes more difficult. Subparagraph (c)(1) provides:

(c)(1) A plan described in subsection (b) does not meet the requirements of subsection (a) unless, under the plan, a participant has a reasonable period in which he may elect the qualified joint and survivor annuity form with respect to the period beginning on the date on which the period described in subsection (b) ends and ending on the date on which he reaches normal retirement age if he continues his employment during that period.

Quite clearly, subparagraph (c)(1) continues to treat only pension plans which provide for early retirement. Under such a

plan, a participant must be provided "a reasonable period" in which to "elect the qualified joint and survivor annuity form" to provide benefits for the period after he becomes eligible for early retirement and the date he reaches normal retirement age, if he continues to work past early retirement age. Both sides refer to this provision as a "pre-retirement death benefit," a characterization with which the court fully agrees. No **pension** or **retirement** benefits are provided for in this provision of the statute. Interestingly, however, the Congress fixes the pre-retirement death benefit in terms of a retirement benefit—the qualified joint and survivor annuity. This provision clearly mandates a death benefit in the form of a qualified joint and survivor annuity.

◼ Although it may require more than one reading to fully appreciate this provision, it is clear that subparagraph (c)(1) relates only to plans providing early retirement benefits, relates only to the employee who continues to work past that date and will provide benefits only if the employee dies before retirement. The provision requires that employees be given the opportunity to elect "the joint and survivor annuity" form of death benefit for a situation in which it is clear that there will never be a joint benefit because the provision will be triggered only by the death of the employee. What is clear is that if a plan provides for early retirement, an employee who reaches early retirement age but continues to work must be given the opportunity to elect a death benefit for the protection of his spouse, thus continuing the Congressional purpose of providing protection for the spouse.

◼ Subparagraph (c)(2) of § 205 provides the most disagreement between the parties. That provision reads:

(c)(2) A plan does not meet the requirements of this subsection unless in the case of such election, **the payments under the survivor annuity are not less than the payments which would have been made under the joint annuity** to which the participant would have been entitled if he had made an election under this subsection immediately prior to his retirement and if his retirement had occurred on the date immediately preceding the date of his death and within the period in which an election can be made. (emphasis supplied)

This provision also requires multiple reading and careful study. Bearing in mind that we consider here a pre-retirement death benefit under a pension plan which provides for early retirement, it is clear that subparagraph (c)(2) establishes a minimum benefit which must be paid to the surviving spouse. Again, the wording is stilted and awkward. The phrase "in the case of such election" obviously refers to an election made under subparagraph (c)(1) by an employee who has reached early retirement age but continues to work and who elects a "qualified joint and survivor annuity" as a pre-retirement death benefit to be paid to his surviving spouse upon his death before retirement.

Both sides agree that subsection (c) was not a part of the original House Bill and that it was added for the purpose of avoiding an artificial incentive for employees to take early retirement. Recalling that subsection (a) mandates protection of the spouse in payment of pension benefits, if the spouse of an employee who reaches earliest retirement age but continues working, gets no protection before actual retirement, there is a strong incentive, created by subsection (a), for the employee to retire as soon as he becomes eligible so as to provide protection for his spouse. Hence, subsection (c) mandates a pre-retirement death benefit to protect the spouse of the employee who attains early retirement age but continues working and dies before actual retirement.

To calculate the death benefit (mandated by subparagraph (c)(1) to be in the form of a joint and survivor annuity) subparagraph (b)(2) requires an assumption that the election made by the employee for a pre-retirement death benefit was made "immediately prior to his retirement" and the further assumption that the employee retired on "the date immediately preceding the date of his death." This provision requires that

the deceased employee be given full credit for all service through the date preceding his death in calculating pre-retirement death benefits. Finally, (although the language is found in the middle of the paragraph) this provision requires that payments to the surviving spouse must be **"not less than the payments which would have been made under the joint annuity."** (emphasis supplied).

*What joint annuity?*

Recall that we have already determined that under subsection (c) there will never actually be a joint annuity. This provision applies only to employees who die before actual retirement, hence there will be no payments during joint lives. The Congress used the words "joint annuity" advisedly and purposely to provide protection to the spouse of the employee who continues to work rather than taking early retirement. The death benefit payable to the spouse must be not less than the payments which would have been payable under the joint annuity to which the participant would have been entitled if he had retired on the day before his death. The Congress thus requires that this benefit be the same **payment** as would have been payable after the employer retired and before his death, that is to say, the joint lives portion of the annuity must continue for the life of the spouse.

The court agrees with plaintiff's argument that subparagraph (c)(2) requires "that the pre-retirement surviving spouse be treated no worse than she would have been treated under the Plan had the participant died after retirement and not before; the pre-retirement survivors benefit payments cannot be less than her post-retirement survivors benefit payments" would have been.

In construing the statute, the court must assume that the Congress used the words which it intended to use, that the Congress intended the result required by the language used and that the Congress did not utilize surplus verbage. *Sutton v. United States,* 819 F.2d 1289 (5th Cir.1987). Here the Congress chose to use the phrase, "[T]he payments which would have been

made under the joint annuity to which the participant would have been entitled," clearly meaning the hypothetical annuity payable during the joint lives of the participant and his spouse. Thus, the statute provides that the pre-retirement death benefit must be not less than 100% of the joint lives annuity which would have been payable during the life of the survivor. This construction is consistent with the Congressional intent shown in subsection (a) to provide spouse protection and to provide spouse protection for employees who reach early retirement age but continue working.

Ethyl argues, and correctly so, that ERISA was intended to mandate only minimum benefits. However, when subparagraph (c)(2) declares that, the payments ... are not less than the payments which would have been made," the Congress is plainly mandating a minimum. The payments under the survivor annuity must not be less, in the words of subsection (g)(3) than, the "amount of the annuity [which would have been] payable during the joint lives of the participant and his spouse and which is the actuarial equivalent of a single annuity for the life of the participant." In other words, the Congress has mandated that the pre-retirement death benefit payable to the surviving spouse of an employee who continues to work after becoming eligible for early retirement but who dies before retirement, shall be the 100% survivor annuity.

■ Ethyl strenuously argues that its provision of the 50% survivor annuity meets the statutory requirement because subsection (g)(3) provides for the "qualified" annuity to be no less than 50%. The court is not persuaded by that argument. The Congress recognized that this is a death benefit to the surviving spouse of an employee who was eligible for retirement but who continued to work and died before retirement; consequently the benefits provide the highest degree of protection for the surviving spouse and the Congress intended to do precisely that.

Subparagraph (c)(2) can have no other meaning. Had subparagraph (c)(2) not been added, then Ethyl's argument would

be sound because there is no need for subparagraph (c)(2) if the Congress had intended the death benefit to be only a 50% survivor annuity. Subparagraph (c)(1) already mandates that form of death benefit and Ethyl's construction of the statute would render subparagraph (c)(2) completely superfluous.

■ On the other hand, the court agrees with Ethyl that Mr. Tulley's election of the 100% Contingent Annuitant Option provided by Ethyl's Plan has nothing to do with the death benefits which are mandated by subparagraph (c)(2). The court agrees with Ethyl's argument that the statute could not be made dependent upon the actual election of retirement benefits by employees. Subsection (c) deals only with death benefits, not retirement benefits. Ordinarily a retirement benefit is not elected until immediately preceding retirement. The statute contemplates the usual situation where an employee continues to work past early retirement age and dies before retiring without ever having elected a retirement benefit. The Congress certainly never intended a death benefit to be dependant upon the actual selection of **retirement benefits** made under a pension plan. Otherwise, how would the death benefit of an employee who had made no retirement election be computed? Accordingly, subparagraph (c)(2) provides for the calculation of that benefit once the death benefit has been selected. All death benefits for those who have elected the death benefit are to be computed in accordance with the hypothetical election of retirement benefits as set forth by subparagraph (c)(2). This court concludes that subparagraph (c)(2) requires that the death benefit be an amount which is equal to 100% of the joint benefit that would have been payable had Mr. Tulley actually retired on the day before his death. That benefit, according to the stipulation would have been equivalent to the 100% Contingent Annuitant Option specified in the Plan, or the sum of $741 per month payable to Mrs. Tulley throughout the remainder of her life.

The Ethyl Plan provides the 60–month guarantee to which reference has been previously made. That benefit is part of the retirement benefits and the court agrees with Ethyl that the company is not to be penalized for providing benefits in excess of the minimum required by statute. Accordingly, the guaranteed 60–month benefit is not a part of the death benefit required by subparagraph (c)(2).

The court finds that the pre-retirement death benefit contained in Article VII Section § A paragraph 2 of the Ethyl Plan does not meet the statutory requirements because it provides only a 50% survivor annuity, rather than a 100% survivor annuity. The court again emphasizes that this result is dictated not by Mr. Tulley's choice of retirement benefits, but by the language of subparagraph (c)(2) of § 205 of the statute. The only election contemplated by subsection (c) of § 205 is the election of the employee to choose a death benefit immediately before he becomes eligible for early retirement. Ethyl's Plan is also deficient in that it fails to provide the "reasonable period" mandated by subparagraph (c)(1) for the employee to elect a death benefit. Instead, the Plan simply provides that the death benefit will be the 50% Contingent Annuitant Option, without the 60–month guaranteed provision. Since the election of a death benefit is automatic under the Plan and subparagraph (c)(2) requires that payments be made in accordance with the 100% survivor annuity, that is what the Plan must do.

The conclusion reached here makes it unnecessary to pass upon the other issues raised.

For the foregoing reasons, plaintiff's motion for summary judgment is GRANTED to the extent discussed herein and defendants' motion for summary judgment is hereby DENIED. There will be judgment herein in favor of plaintiff and against defendants recognizing that she is entitled to receive an annuity in the amount of $741 per month (presumably increased to $926.25 per month for the cost of living increase previously granted), said amount to be payable during her lifetime. There will be no requirement that 60 months be

guaranteed even in the event of her death prior to that five year period.

Judgment will be entered accordingly.