### Elizabeth R. TULLEY, Plaintiff–Appellee,

v.

### ETHYL CORPORATION and the Retirement Income Plan for the Employees of Ethyl Corporation, Defendants–Appellants.

No. 88–3071.

United States Court of Appeals, Fifth Circuit.

Dec. 2, 1988.

---

J.G. Ritter, II, Richmond, Va., R. Patrick Vance, Elizabeth J. Futrell, New Orleans, La., Mark S. Dray, Richmond, Va., for defendants-appellants.

Roger M. Fritchie, Baton Rouge, La., for plaintiff-appellee.

Before RUBIN, HIGGINBOTHAM, and THORNBERRY, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

The parties dispute the amount of death benefits owed a surviving spouse under an employer's pre-retirement death benefits plan, and whether that plan is in compliance with the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1055. We find that the employer miscalculated the benefits due to the surviving spouse under the plan, and hold that the plan, as it should have been applied, satisfies the requirements of ERISA.

## I.

Ethyl Corporation's Employees Retirement Income Plan provides two actuarially-equivalent forms of death benefits for a retired participant's surviving spouse: a 50% Contingent Annuitant Option and a 100% Contingent Annuitant Option. Under the 50% Contingent Annuitant Option, upon the death of the participant, the surviving spouse or designated beneficiary receives 60 guaranteed monthly payments at 100% of the participant's level; thereafter, only the surviving spouse receives benefits, reduced to 50% of the participant's level. The 100% Contingent Annuitant Option maintains the first 60 months of guaranteed payment at the 100% level, but continues to pay the surviving spouse after the first 60 months at 100% of the participant's level. The election form on which a participant selects the 50% or 100% Contingent

Annuitant Option states that the election "shall not become effective until [the participant] actually retire[s]."

Frederick T. Tulley was a long-time employee of Ethyl Corporation. On April 20, 1983, Tulley, who was seriously ill, chose to take early retirement, effective May 1, 1983, and, with the encouragement of Ethyl officials, elected the 100% Contingent Annuitant Option so that his wife could benefit from this post-retirement pension package. The parties stipulate that, under this option, if Tulley had died after he had retired, his surviving spouse would have received $741.51 per month for the remainder of her life, with the first 60 monthly payments guaranteed. In contrast, if Tulley had elected the 50% Contingent Annuitant Option, retired, and then died, his widow would have been entitled to receive $843 per month guaranteed for 60 months, and $421.50 per month for the remainder of her life.

Mr. Tulley died on April 30, 1983, the day before his retirement was to take effect. Under Ethyl's pension plan, this made Mrs. Tulley eligible only for the benefits payable to the surviving spouse of a participant who dies before retirement. The plan stipulates that the surviving spouse of a participant who dies before retirement shall receive monthly payments computed as if the participant had chosen the "50% Contingent Annuitant Option," retired, and then died, except that such benefits "shall be increased on an Actuarially Equivalent basis to allow for the elimination of the sixty (60) monthly payments guaranteed."

Ethyl determined that, under its pre-retirement-death-benefits plan, Mrs. Tulley was entitled to receive $425.64 per month for the remainder of her life. According to the affidavit of the manager of pensions for Ethyl Corporation, Ethyl reached this conclusion by ascertaining the value of a life annuity for Tulley with five years of guaranteed payments; converting that amount into the value of a single life annui-

ty benefit with no guaranteed payments, which would pay $996.80 monthly; and then converting that amount into what it would provide if it were a 50% joint-and-survivor annuity, or $851.27 monthly; and finally dividing in half the annuity that would be payable in order to arrive at the 50% survivor's benefit, or $425.64 per month.

Mrs. Tulley challenged Ethyl's method of calculation as both inconsistent with the plan and violative of ERISA. The district court sustained her challenge on the statutory ground, holding that ERISA requires that the "pre-retirement death benefit payable to the surviving spouse of an employee who continues to work after becoming eligible for early retirement but who dies before retirement, shall be the 100% survivor annuity," and that the "death benefit be ... equal to 100% of the joint benefit that would have been payable had Mr. Tulley actually retired on the day before his death. That benefit ... would have been equivalent to the 100% Contingent Annuitant Option specified in the Plan, or the sum of $741 per month payable to Mrs. Tulley throughout the remainder of her life."[1] Ethyl appeals the district court's judgment, asserting that the statute does not mandate a 100% survivor annuity for pre-retirement death benefits and that its method of calculating Mrs. Tulley's survivor annuity is consistent with the plan.

## II.

Before we reach the merits of this appeal, we consider sua sponte the question of appellate jurisdiction. The civil docket sheet recording the district court's proceedings denotes in its left-hand column that the court granted relief to Mrs. Tulley on December 24, 1987, and that Ethyl filed a notice of appeal January 27, 1988. It would, therefore, appear that the notice of appeal was untimely filed, failing to meet the 30–day requirement of Federal Rule of Appellate Procedure 4(a)(1).[2]

---

1. 678 F.Supp. 614 (M.D.La.1988).

2. F.R.A.P. 4(a)(1) provides, in pertinent part:

> In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal ... shall be filed with the clerk of the district court

Directly following the inscription of the district court's judgment and the defendants' notice of appeal in the docket sheet, however, is the notation "dkt", and a date: the judgment, signed December 24, 1987, was apparently entered on the docket sheet at the district court clerk's office on December 29, and the defendants' notice of appeal, filed January 27, 1988, was entered on the docket sheet on January 28. In *Harcon Barge Co., Inc. v. D & G Boat Rentals, Inc.*[3] and, more recently, in *United States v. Doyle,*[4] this court held that the timeliness of a notice of appeal "is measured from the date of entry of the judgment on the entry sheet, not from its date of filing." The date of entry is evinced by the " 'Dkt', 'Dk't,' or 'Dkt'd' (i.e., 'docketed'), followed by the date of such entry." The district court's docket sheet in this case reveals that the order appealed from was not docketed until December 29, 1987, and the filing of the notice of appeal on January 27, 1988 was, therefore, within the 30–day requirement of F.R.A.P. 4(a)(1).

### III.

■ Before we can decide whether Ethyl's plan conforms to the statutory requirements, we must decide what benefits the plan itself provides, a matter about which the parties disagree. Tulley's election of the 100% Contingent Annuitant Option was, by its terms, ineffective, because the election form provided that a participant's "election ... shall not become effective until [he] actually retire[s]." Instead, Mrs. Tulley's rights are governed by Article VII, section A, paragraph 2 of the Ethyl Retirement Income Plan, which spells out the method by which a surviving spouse's benefits are calculated when an employee eligible for early retirement dies before retirement:

[The] surviving spouse shall be entitled to a monthly allowance ... [which] shall be equal to the amount that would have been payable to the Contingent Annuitant (in this case the Surviving Spouse) had the member elected the 50% Contingent Annuitant Option and retired on the first day of the month following his date of death. Not withstanding the above, such allowance shall be increased on an Actuarially Equivalent basis to allow for the elimination of the sixty (60) [guaranteed] monthly payments.

Mrs. Tulley claims that Ethyl miscalculated her benefits under this provision.

Ethyl interprets this provision to permit it to compute Mrs. Tulley's benefits through a series of annuity conversions: converting Tulley's five-year certain and life annuity retirement benefit into a single life annuity, converting that annuity into a 50% qualified joint and survivor annuity, determining the monthly benefit to which Tulley would have been entitled under that annuity, and then taking one-half of that amount to arrive at the monthly payment due to Mrs. Tulley. Ethyl contends that the excision of the 60 guaranteed payments at the 100% level permits it to pay Mrs. Tulley at the 50% level for the remainder of her life using the amount payable under a 50% qualified joint and survivor annuity, and concludes that Mrs. Tulley's interest as the surviving spouse in this annuity amounts to $425.64 per month.

While we, of course, ordinarily defer to the construction propounded by the administrator of a pension plan,[5] the administrator's interpretation commands this respect only if it is not "arbitrary or capricious,"[6] that is, only if the interpretation is reasonably deducible from the words used. Ethyl's method of calculation is so far removed from the realm of reasonable interpretations of the plan that we are compelled to find it invalid.

within 30 days after the date of the entry of the judgment or order appealed from....

**3.** 746 F.2d 278, 282 (5th Cir.1984), *vacated en banc,* 784 F.2d 665 (1986).

**4.** 854 F.2d 771, 772–73 (5th Cir.1988).

**5.** *Denton v. First National Bank of Waco,* 765 F.2d 1295, 1303 (5th Cir.1985); *Bayles v. Central States Southeast and Southwest Area Pension Fund,* 602 F.2d 97, 99 and 100 n. 3 (5th Cir. 1979).

**6.** *Ibid.,* citing *Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc.,* 637 F.2d 357, 362 (5th Cir.1981), *cert. denied,* 454 U.S. 836, 102 S.Ct. 140, 70 L.Ed.2d 117 (1981).

The first sentence of the plan fixes a basic benefit: "the *amount* that would have been payable" had the employee elected the 50% Contingent Annuitant Option. The second sentence expressly provides for an *increase* in the amount of benefits to compensate the surviving spouse for the *loss* of 60 months of guaranteed benefits at the 100% level.

Ethyl's first mistake lies in its failure to follow the formula specifically prescribed in the plan. The plan unequivocally asserts that the surviving spouse be treated as though her deceased husband had (1) elected the 50% Contingent Annuitant Option, (2) retired, and (3) then died, with the resulting benefits modified *only* to reflect the loss of 60 guaranteed monthly payments at the 100% level. Ethyl, however, proposes to determine Mrs. Tulley's benefits in a complex, four-step process. Ethyl's arithmetic does not start with the 50% Contingent Annuitant Option that the plan identifies as the base-line measure of a simple, single-step calculation, but instead, with some actuarial equivalent.

The second error lies in the method by which Ethyl has chosen to compensate for the loss of 60 guaranteed payments. According to Mrs. Tulley's figures, which Ethyl has not disputed, this loss amounts to $421.50 per month for 60 months, or a total of $25,290.00. Yet, Ethyl's calculation increases Mrs. Tulley's monthly stipend by a trifling $4.14 over the $421.50 she would receive after 60 months under the 50% Contingent Annuitant Option. Mrs. Tulley would have to live more than 500 years to recoup the lost benefits to which she is entitled under Ethyl's plan. This disparity leads to the conclusion that the increase proposed by Ethyl is not calculated on an actuarially equivalent basis.

The language of the plan could not be more clear: start with "the *amount* that would have been payable ... had the member elected the 50% Contingent Annuitant Option." Then increase this amount to compensate for the loss of 60 months of guaranteed benefits. This should involve a single computation, spreading the value of 60 months of benefits at the 100% level over the remaining lifetime of the surviving spouse. This calculation is the only conversion required or permitted by the plan. By deviating from the prescribed method of computation, Ethyl has failed to provide Mrs. Tulley with the benefits to which she is entitled under its plan.

## IV.

■ Mrs. Tulley contends that the provisions of Ethyl's pre-retirement death benefits plan, even when properly administered, does not comply with § 205 of ERISA.

Section 205(a) requires that any pension plan providing an annuity must provide benefits for a surviving spouse: "If a pension plan provides for the payment of benefits in the form of an annuity, such plan shall provide for the payment of annuity benefits in a form having the effect of a qualified joint and survivor annuity." The term "qualified joint and survivor annuity" is defined, in relevant part, by § 205(g)(3) as an

annuity for the life of the participant with a survivor annuity for the life of his spouse which is not less than one-half of ... the amount of the annuity payable during the joint lives of the participant and his spouse and which is the actuarial equivalent of a single annuity for the life of the participant.

It is uncontested that the modified 50% Contingent Annuitant Option provided in Ethyl's pre-retirement death benefits plan, like the 100% Contingent Annuitant Option, is a qualified joint and survivor annuity: if the plan is properly interpreted, Mrs. Tulley receives not less than one half of the amount of the annuity that would have been payable for the joint lives of herself and her husband, and this annuity is actuarially equivalent to a single annuity for the life of her husband. Thus, Ethyl's modified 50% Contingent Annuitant Option conforms to the definition in § 205(g)(3).

In the case of an employee who dies before retirement, however, a qualified joint and survivor annuity must satisfy other requirements set forth in § 205. Section 205(c)(1), read in the context of subsection (b), states that a plan "providing for [the] payment of benefits *before* normal retirement age"

does not meet the requirements of subsection (a) unless, under the plan, a participant has a reasonable period in which he may elect the qualified joint and survivor annuity form with respect to the period ... ending on the date on which he reaches normal retirement age if he continues his employment during that period (emphasis supplied).

Section 205(c)(1) thus requires employers to give participants "reasonable" time to "elect" a qualified joint and survivor annuity that provides for pre-retirement death benefits. The only choice provided by Ethyl to its employees is between the 50% and 100% Contingent Annuitant Options, both of which are *post-retirement* plans. There is no evidence that Ethyl gives its employees a choice of *pre-retirement* plans, let alone a "reasonable period" within which to exercise that choice.

Ethyl's apparent dereliction does not, however, render its plan violative of ERISA. The Department of the Treasury, promulgating tax regulations concerning pension plans, offers some guidance when it stipulates that a "plan is not required to provide an election [of pre-retirement death benefits] ... if ... the plan provides that an early survivor annuity is the only form of benefit payable under the plan with respect to a married participant who dies while employed by an employer maintaining the plan." The Treasury regulations define an "early survivor annuity" as

an annuity for the life of the participant's spouse the payments under which must not be less than the payments which would have been made to the spouse under the joint and survivor annuity if the participant had made the election ... immediately prior to his retirement and if his retirement had occurred on the day before his death and within the period during which an election can be made ..." [7]

The Treasury regulations then illustrate how such an early survivor annuity would work: "if a participant would be entitled to a single life annuity of $100 per month or a reduced amount under a qualified joint and survivor annuity of $80 per month, his spouse is entitled to a payment of at least $40 per month." [8]

While we do not incorporate the Treasury regulations into ERISA to create substantive rights,[9] we do defer to the Internal Revenue Service's interpretation of the statutory language, since the IRS was originally one of the agencies charged with administering ERISA,[10] and under Reorganization Plan No. 4 of 1978,[11] the Secretary of the Treasury was assigned the Secretary of Labor's authority to issue regulations and rulings under 29 U.S.C. § 1055, the portion of ERISA under consideration here. The modified 50% Contingent Annuitant Option constitutes the type of early survivor annuity contemplated by the Treasury regulations. It automatically provides the surviving spouse of a participant who dies before retirement with monthly payments at 50% of the participant's level, increased to allow for the elimination of 60 months of guaranteed payment at the 100% level. The benefit thus calculated exceeds the 50% minimum established by the example in the Treasury regulations. Because Ethyl extends this coverage to all surviving spouses, it is excused from the task of providing employees with a choice of pre-retirement death benefits.

Section 205(c)(2) enunciates additional requirements:

A plan does not meet the requirements of this subsection unless, in the case of such election, the payments under the survivor annuity are not less than the payments which would have been made under the joint annuity to which the participant would have been entitled if he

7. 26 C.F.R. § 1.401(a)–11(b)(3).

8. *Ibid.*

9. *Craig v. Bemis Co., Inc.,* 517 F.2d 677, 686 (5th Cir.1975); *Dooley v. American Airlines, Inc.,* 797 F.2d 1447, 1453 (7th Cir.1986); *Recklau v. Merchants Nat. Corp.,* 808 F.2d 628, 631 (7th Cir. 1986).

10. *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981); *Rose v. Long Island R.R. Pension Plan,* 828 F.2d 910, 918 (2d Cir.1987); *Blessitt v. Retirement Plan for Emp. of Dixie Eng.,* 848 F.2d 1164, 1170–71 (11th Cir.1988); *Smith v. Mirman,* 749 F.2d 181, 183 (4th Cir.1984); *Utility Workers, Etc. v. Consumers Power Co.,* 637 F.2d 1082, 1089 (6th Cir.1981).

11. 5 U.S.C.App. § 101(a) (1982); *See also* 29 C.F.R. 2530.200a–2 (1984).

had made an election under this subsection immediately prior to his retirement and if his retirement had occurred on the date immediately preceding the date of his death and within the period within which an election can be made.

Section 205(c)(2), like subsection (c)(1) and the Treasury regulations, concerns the death benefits plan for spouses whose husbands die before retirement.

To satisfy § 205(c)(2), payments made "under the survivor annuity" of a pre-retirement death benefits plan must not be less than "the payments which would have been made under the joint annuity to which the participant would have been entitled" if he had "made an election under this subsection [c]," retired, and then died. While § 205(c)(2) mandates the payment of this "joint annuity" minimum and fixes the date for its calculation, it does not explain whether the "payments which would have been made under the joint annuity" are the payments that would have been made for the joint lives of the participant and his surviving spouse, or simply the payments that would have been made to the surviving spouse. Relying on Congress' intention to "provide the highest degree of protection for the surviving spouse," the district court filled the hiatus in the statutory language by holding that § 205(c)(2) "requires that the [surviving spouse's] death benefit be an amount which is equal to 100% of the joint benefit that would have been payable had Mr. Tulley actually retired on the day before his death."

Neither the statutory language nor its legislative history supports or impugns the district court's conclusion. In explaining parallel statutory language, however, the Treasury regulations interpret the requirement to denote payments to the surviving spouse. This construction is the only interpretation that furthers Congress' general purpose in enacting § 205(c)(1) and (c)(2), that is, that pension plans remain completely retirement neutral: Congress sought to prevent employers from giving participants

in pension plans an "unwarranted artificial incentive" to retire early or an artificial incentive to continue working.[11] When the phrase "the payments which would have been made under the joint annuity" is read as "payments which would have been made [to the spouse] under the joint annuity", the statute promotes the legislative objective that pension plans remain retirement neutral; it requires the benefits that a spouse receive be unaffected by the fact that her husband elected to retire or to continue working, and, if he should die, whether he died before or after retirement. If the surviving spouse's pre-retirement death benefits always amounted to 100% of the amount payable for the joint lives of the participant and his surviving spouse, as the district court proposes, then a participant would have a very strong incentive *not* to retire; death before retirement would result in the greatest benefits accruing to the surviving spouse not only because of the statutory requirement, but also because the participant's contributions would continue to increase. Our interpretation of § 205(c)(2) serves to assure a participant who reaches early retirement age that he can continue working with the knowledge that, should he die before retirement, his spouse will receive the same benefits that would have been paid had he retired the day before his death.

Section 205(c)(2) does not mean that the spouse of a participant who dies before retirement will receive the benefit she would have been paid had her husband lived until retirement age and collected benefits under his post-retirement election. A participant's election of certain post-retirement benefits is immaterial to the application of § 205(c)(2). That section requires only that the amount due the spouse of a participant who dies *before* retirement be computed with all of the contributions that would have been made up until the date of the participant's death, that is, had the employee elected a joint and survivor annuity and retired before his actual death. The plan itself, which serves as the deter-

---

**11.** H.R.Rept. No. 93–807, 93d Cong., 2d Sess. 67, *reprinted in* [1974] U.S.Code & Ad.News 4639, 4670, 4733.

minant in the absence of a pre-retirement election, fixes the amount of benefits due a surviving spouse.

The requirements of § 205(c)(2) are, therefore, met by the provisions of the plan, as properly interpreted, and the plan satisfies the standards set forth in the applicable portions of § 205(a) and (c)(1). We, therefore, VACATE the judgment of the district court and REMAND for a determination of the amount payable to Mrs. Tulley under the modified 50% Contingent Annuitant Option. That computation shall follow the prescription in the plan. It shall start with determination of the *amount* that would have been payable had Mr. Tulley elected the 50% Contingent Annuitant Option (and, as prescribed by the regulations, retired on the first day of the month following his date of death). That amount shall then be increased by computing the value of the 60–month–payment guarantee, and spreading that value over the life expectancy of Mrs. Tulley on an actuarially equivalent basis.