Mary L. SANDIFER

v.

CENTRAL STATES SOUTHEAST AND SOUTHWEST AREAS PENSION FUND.

Civ. A. No. 88–087.

United States District Court, E.D. Louisiana.

March 30, 1989.

Joseph G. Albe, New Orleans, La., for plaintiff.

Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, J. David Forsyth, T.A., New Orleans, La., for Central States Southeast & Southwest Areas Pension Fund.

## ORDER AND REASONS

FELDMAN, District Judge.

This case, before the Court on cross-motions for summary judgment, raises the question of whether a provision of defendant's Joint and Survivor Pension Benefit Plan violated ERISA, 29 U.S.C. § 1055(e), making the defendant liable for an arbitrary and capricious denial of pension benefits under 29 U.S.C. § 1132.

### I. *Factual Background*

Plaintiff's deceased husband, Monroe L. Sandifer, was a member of Teamsters Local No. 270, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. Mr. Sandifer was a participant in the Central States, Southeast and Southwest Area Pension Fund pursuant to the collective bargaining agreement between the Teamsters Local and McLean Trucking Company, Mr. Sandifer's employer. Mr. Sandifer died on August 18, 1978, at age 59, before retirement.

After Mr. Sandifer's death, the plaintiff applied for a Survivor Pension Benefit. The Fund approved her application for a Pre–Retirement Survivor Pension Benefit, and paid her $450.00 a month for sixty months (from September, 1978 until August, 1983, for a total of $27,000.00). Thereafter, the payments ceased.

From November, 1979 until October, 1983, Mrs. Sandifer corresponded with the Fund, asking if her pension benefits would continue for life. The Fund representatives advised her that she was ineligible for benefits after August, 1983 because Mr. Sandifer had not elected in writing the Pre–Retirement Joint and Survivor Pension Benefit as required by the Pension Plan.

After exhausting her administrative remedies, including a decision by Fund Trustees to deny plaintiff's appeal for future benefit payments, plaintiff brought suit under ERISA, 29 U.S.C. § 1132. Plaintiff contends: 1) that the Plan in effect at the time of her husband's death violated 29 U.S.C. § 1055(e); 2) that, whether or not the original plan violated ERISA, the amended Plan subsequently adopted by the Fund should apply retroactively; 3) that the Court should award attorney's fees for defendant's arbitrary and capricious denial of pension benefits; and 4) that she is entitled to damages for aggravated heart and high blood pressure conditions caused by defendant's wrongful denial of benefits.

Defendant counters that: 1) 29 U.S.C. § 1055(e) does not apply to this case; 2) that the subsequently adopted plan amendment does not retroactively confer benefits on plan participants; 3) that the decision of the Fund Trustees was not arbitrary and capricious; and 4) that plaintiff is not entitled to attorney's fees under 29 U.S.C. § 1132 or other damages.

## II. Standard of Review of Fund Trustees Decision

■ The threshold issue facing this Court is what standard of review to apply to the Fund Trustees' decision denying plaintiff's appeal for lifetime benefit payments. Longstanding Fifth Circuit precedent consistently held that pension plan administrators' determinations regarding benefit eligibility were to be upheld unless arbitrary, capricious, or in bad faith. *Pierre v. Connecticut General Life Insurance Co.*, 866 F.2d 141, 143 (5th Cir.1989); *Denton v. First National Bank of Waco*, 765 F.2d 1295 (5th Cir.1985), rehg. den. 772 F.2d 904 (5th Cir.1985); *Offutt v. Prudential Insurance Co.*, 735 F.2d 948, 950 (5th Cir.1984); *Bayles v. Central States, Southeast and Southwest Area Pension Fund*, 602 F.2d 97, 100 n. 3 (5th Cir.1979).

However, recently the United States Supreme Court, in *Firestone Tire and Rubber Co. v. Bruch*, — U.S. ——, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), held that the arbitrary and capricious standard of review is no longer the rule for Section 1132(a)(1)(B) challenges. In *Firestone*, the Court stated, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* 109 S.Ct. at 956.

The Supreme Court said that in enacting ERISA, Congress intended to incorporate much of the fiduciary law contained in the Labor Management Relations Act. The LMRA provides for an arbitrary and capricious standard of review, but courts construing the statute have held that the arbitrary and capricious standard served primarily as a means of asserting jurisdiction over suits by beneficiaries of LMRA plans who were denied benefits by trustees. *See, e.g., Van Boxel v. Journal Co. Employees' Pension Trust*, 836 F.2d 1048, 1052 (7th Cir.1987). However, the Court explained, ERISA, unlike the LMRA, explicitly authorizes suits against fiduciaries and plan administrators to remedy breaches of fiduciary duty regarding benefit plans. Thus, the Supreme Court concluded, "the *raison d'etre* for the LMRA arbitrary and capricious standard—the need for a jurisdictional basis in suits against trustees—is not present in ERISA." *Firestone* 109 S.Ct. at 954. *See also*, Note, "Judicial Review of Fiduciary Claim Denials under ERISA: An Alternative to the Arbitrary and Capricious Test" 71 *Cornell L.Rev.* 986, 994 n. 40 (1986).

The Supreme Court did note that, in drafting ERISA, Congress codified and made applicable to ERISA fiduciaries "certain principles developed in the evolution of the law of trusts." *Firestone* at 954, citing H.R.Rep. No. 93–533, p. 11 (1973), U.S.Code Cong. & Admin.News 1974, pp. 4639, 4649. The Court further stated that under the law of trusts, a deferential standard of review is appropriate when a trustee exercises discretionary powers. *Id.*

Importantly, the Court, in dictum, cited *Central States, Southeast & Southwest Areas Pension Fund v. Central Transport, Inc.*, 472 U.S. 559, 568, 105 S.Ct.

2833, 2839, 86 L.Ed.2d 447 (1985) to illustrate the proposition that deference is due the trustees of a benefit plan when the plan itself provides for discretionary authority:

> The trustees' determination that the trust documents authorize their access to records here in dispute has significant weight, for the trust agreement explicitly provides that 'any construction [of the agreement's provisions] adopted by the Trustees in good faith shall be binding upon the Union, Employees, and Employers.'

That same pension plan is at issue in this case. As the Supreme Court noted in *Firestone*, the Central States plan explicitly gives the Trustees discretionary authority to determine eligibility for benefits and to construe the terms of the plan. Article IV, Section 17 of the Trust Agreement, provides:

> The Trustees, by majority action, shall have the power to construe the provisions of this Agreement and the terms and regulations of the Pension Plan; and any construction adopted by the Trustees in good faith shall be binding upon the Union, Employees, and Employers.

When the Trustees determined Mrs. Sandifer's pension benefit eligibility within the language of the plan requirements, they were exercising the discretionary authority specifically vested in them by the trust instrument. *Firestone*, therefore, teaches that the defendant here falls within the exception to *de novo* review of Section 1132(a)(1)(B) claims established by the Supreme Court in that case.

Although the *Firestone* Court did not specifically state how much deference was due the Trustees of a pension plan when the plan provides for discretionary authority, the Court referred to the highly regarded Restatement (2d) of Trusts § 187 (1959) which counsels that, "Where discretion is conferred upon the trustee with respect to the exercise of a power, its exercise is not subject to control by the court except to prevent an abuse by the trustee of his discretion." (cited by the Court 109 S.Ct. at 954). Thus, this Court understands that the Supreme Court intended for reviewing courts to use an abuse of discretion standard in evaluating the decisions of plan trustees where, as here, the decisions involved an exercise of discretionary authority vested by the plan in the trustees.

## III. *Reviewing the Trustees' Decision: Did "Plan A" Violate 29 U.S.C. § 1055(e)?*

Article IV, § 5(a)–(b) of the pension plan in effect when Mr. Sandifer died (Plan A) provided:

> A Joint and Survivor Pension Benefit (subject to the election and rejection provisions in "APPENDIX A" of this Plan) shall be payable to a Pensioner upon Retirement (commencing upon his 55th birthday), or to the surviving spouse of a Participant upon his death on or after his 55th birthday but before his Retirement, if the Participant was then eligible for immediate payment of a pension benefit in accordance with Article IV, § 2, 3, or 4. Upon death of a Pensioner receiving this pension benefit, 50% thereof becomes payable to his surviving spouse, subject to other provisions in this section. If payable, the Joint and Survivor Pension Benefit shall be paid in lieu of any other pension benefit available pursuant to this Plan.

> Election by a Participant to receive or to reject a Joint and Survivor Pension Benefit shall be registered by him pursuant to procedures established by the Trustees from time to time. "APPENDIX A" attached to this Plan sets forth the election procedures effective commencing January 1, 1976. After a Participant reaches his Normal Retirement Date (as defined in Article I, § 10) and as long as he remains in Covered Employment (as defined in Article III, § 2), the Joint and Survivor Pension Benefit shall be payable upon the earlier of his death or Retirement if he was then eligible for payment of a pension benefit, unless he has elected in writing that such benefit will not be payable upon his death after Retirement.

Appendix A(2) of Plan A further provided:

If the Participant does not elect in writing that such benefit shall be payable upon his death before Retirement, the Joint and Survivor Pension Benefit will not be payable if he dies before his Normal Retirement Date.

Thus, if a participant in Plan A elected the Pre–Retirement Joint and Survivor Pension Benefit, continued working past early retirement age, and died before retiring, the participant's surviving spouse would receive a lifetime annuity. If the participant did not so elect, the surviving spouse would receive a Pre–Retirement Survivor Pension Benefit of limited duration.[1]

Mr. Sandifer did not elect the Pre–Retirement Joint and Survivor Pension Benefit. As a result, when Mrs. Sandifer applied for a Survivor Pension Benefit after her husband's death, the Fund approved her application for a Pre–Retirement Survivor Pension Benefit and paid her $450.00 each month for sixty months, from September, 1978 until August, 1983.

When the payments ceased at the end of the sixty month period prescribed by the Plan, the plaintiff appealed to the Plan trustees for additional benefits. The Trustees denied plaintiff's appeal based on Mr. Sandifer's failure to elect the Pre–Retirement Joint and Survivor Pension Benefit, as required by Article IV § 5.

Plaintiff now argues that this denial was improper because the election requirement in Article IV § 5 of Plan A violated 29

U.S.C. § 1055(e), as it was enacted in 1974.[2] Section 1055(e) provided:

> A plan shall not be treated as satisfying the requirements of this section unless, under the plan, each participant has a reasonable period (as prescribed by the Secretary of the Treasury by regulations) before the annuity starting date during which he may elect in writing (after having received a written explanation of the terms and conditions of the Joint and Survivors Annuity and the effect of an election under this sub-section) not to take such Joint and Survivors Annuity.

The plaintiff contends that defendant's Plan A offended Section 1055(e) because the Plan required the participant to elect a Joint and Survivors Annuity, rather than making this benefit automatic unless a participant elected *not* to take a Joint and Survivors Annuity. However, defendant counters that Section 1055(e) does not apply to this case; rather, it is stressed, Section 1055(c)(1) controls.[3]

ERISA's legislative history supports the defendant's position. The official Legislative History of ERISA, issued by the Senate Committee on Labor and Public Welfare, clearly states:

> In the case of an employee who retires, or who attains the normal retirement age, the joint and survivor provision is to apply unless the employee elected otherwise.

---

**1.** The Pre–Retirement Survivor Pension Benefit provided for monthly payments to the surviving spouse, for a maximum of sixty months, in the amount the participant would have received had he retired immediately before his death. Article IV § 9(b). The monthly payment of a Pre–Retirement Joint and Survivor Pension Benefit, on the other hand, would be 50% of an actuarially reduced amount, resulting in a smaller monthly payment than the Pre–Retirement Survivor Pension Benefit, but it would be for life.

**2.** Section 1055 was amended in 1984; however, the 1974 version applies to this case because Mr. Sandifer died in 1978. *Tulley v. Ethyl Corp.,* 678 F.Supp. 614, 617 n. 1 (M.D.La.1987), *vacated on other grounds,* 861 F.2d 120 (5th Cir.1988).

**3.** Section 1055(c)(1) originally provided:
 A plan desribed in subsection (b) of this section does not meet the requirements of sub-

section (a) of this section unless, under the plan, a participant has a reasonable period in which he may elect the qualified joint and survivor annuity form with respect to the period beginning on the date on which the period described in subsection (b) of this section ends and ending on the date on which he reaches normal retirement age if he continues in his employment during that period.
This section was amended in 1984, changing the election system from one in which the participant must elect to receive a joint and survivor annuity to one in which the participant automatically receives a joint and survivor annuity unless he waives that right. The original version of Section 1055(c)(1) was in effect when Mr. Sandifer chose not to elect the joint and survivor annnuity.

In the case of an employee who is eligible to retire prior to the normal retirement age under the plan, and who does not retire, *the joint and survivor provision need not be applicable under the plan, unless the employee made an affirmative election.* Moreover, the plan need not make this option available until the employee is within 10 years of normal retirement age.

Cong.Rep., 94th Cong., 2d Sess. Legislative History of ERISA at 4757 (Comm. Print 1976). (Emphasis added.)

Congress intended to distinguish between employees who retire at the normal retirement age and employees, like Mr. Sandifer, who continue to work past normal retirement age. For people working past retirement age, Section 1055(c)(1) not Section 1055(e) controls. In *Tulley v. Ethyl Corp.*, 861 F.2d 120, 124 (5th Cir.1988), the Fifth Circuit agreed:

In the case of an employee who dies before retirement, however, a qualified joint and survivor annuity must satisfy other requirements set forth in § 205. Section 205(c)(1) [29 U.S.C. § 1055(c)(1) ], read in the context of subsection (b), states that a plan "providing for [the] payment of benefits *before* normal retirement age" does not meet the requirements of subsection (a) unless, under the plan, a participant has a reasonable period in which he may elect the qualified joint and survivor annuity form ... ending on the date on which he reaches normal retirement age if he continues his employment during that period.

Section 205(c)(10 thus requires employers to give participants "reasonable" time to "elect" a qualified joint and survivor annuity that provides for pre-retirement death benefits. (Emphasis in original).

The legislative history and *Tulley* anticipate no result other than to hold that defendant's Plan A comported with Section 1055(c)(1) by providing Mr. Sandifer the opportunity to elect in writing the Pre–Retirement Joint and Survivor Pension Benefit. The written election requirement did not violate ERISA; indeed, ERISA itself provided for such a requirement. Thus, the Trustees' denial of lifetime benefits to the plaintiff, based on the written election requirement, was not improper and certainly not an abuse of discretion. *See Lee v. Union Electric Co.,* 789 F.2d 1303 (8th Cir.), *cert. denied,* 479 U.S. 962, 107 S.Ct. 460, 93 L.Ed.2d 406 (1986) (Surviving spouse's claim for lifetime annuity under company retirement plan was properly dismissed where the plan required an affirmative election to provide lifetime benefits to the spouse of an employee who died before retirement, and decedent had failed to make the election).

## IV. *Does the Amended Plan Apply Retroactively to the Plaintiff?*

Plaintiff argues that even if Plan A did not violate ERISA, then amended Plan B, which does not have the written election requirement, applies retroactively to the plaintiff. This argument is also without merit.

Almost a year after Mr. Sandifer's death, Plan A was amended. The central difference between Plan A and the amended Plan B was that instead of the requirement that participants "elect in writing" to receive the Joint and Survivors benefits, participants would have to "reject in writing" the Joint and Survivors benefits. Essentially, the Plan substituted a written waiver requirement for the written election requirement. Otherwise, the benefit would be automatic.

Plaintiff argues that this amendment should have retroactive effect, and she invokes Sections 1082(c)(8) and 1054(b)(1)(B)(i) of ERISA to support her contention. Section 1082(c)(8) in part provides:

... any amendment applying to a plan year which (does not reduce benefits) ... shall, at the election of the plan administrator, be deemed to have been made on the first day of such plan year.

And Section 1054(b)(1)(B)(i) in part provides:

... any amendment to the plan which is in effect for the current year shall be treated as in effect for all other plan years.

Neither section applies to this case. Rather, they were designed to prevent diminishment of accrued employee benefits or changes in vesting schedules by way of amendments to benefit plans. They deal with benefit accrual requirements and minimum funding standards. The plan amendment at issue speaks to none of these concerns; rather, the amendment merely changes the administrative procedure for obtaining Joint and Survivor Benefits. Plaintiff's position takes these statutes out of their structural context and distorts their meaning.

The benefit of which plaintiff now claims she was deprived was always available to her husband; he, however, elected not to take advantage of it. A procedural change in how a plan participant obtains a benefit that was equally available under the original plan is not the sort of amendment intended by Congress to have retroactive effect. *See, e.g., Stewart v. National Shopmen Pension Fund,* 730 F.2d 1552 (D.C. Cir.1984), *cert. den.,* 469 U.S. 834, 105 S.Ct. 127, 83 L.Ed.2d 68 (1984).

Plaintiff's argument here that the Plan B amendment substituting a waiver provision for an election provision should have retroactive effect is therefore without merit.

### V. *Plaintiff's Claim for Extra-contractual Damages*

Finally, plaintiff wants compensatory damages for her heart and high blood pressure problems which she says were aggravated by the defendant's denial of benefits; she believes the defendant is liable for the physical pain and mental anguish she has suffered. This claim, too, must be dismissed.

 Because this Court has already held that defendant did not violate 29 U.S. C. § 1132 when it denied plaintiff's claim for lifetime benefits, plaintiff's claim for extra-contractual damages is moot. But even if this Court had found that defendant violated Section 1132, plaintiff would still be precluded from asserting damages for mental and physical pain.

The Supreme Court has clearly held that ERISA preempts all state laws relating to any claim arising out an employee benefit plan. 29 U.S.C. § 1144(a); *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Moreover, under ERISA, the only civil action cognizable against an employee benefit plan is an action "to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Extra-contractual damages, such as those sought here for mental distress and physical pain, are not authorized by Section 1132. *Massachusetts Mutual Life Insurance Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). And, as this Court stated in *Rollo v. Maxicare of Louisiana,* 698 F.Supp. 111, 116 (E.D.La.1988), "This Court will not usurp the Legislature's province by giving the plaintiff leave to assert entitlement to extra-contractual damages that Congress has not seen fit to provide."

### VI. *Conclusion*

There are no material disputed facts in this case. Both parties agree that Mr. Sandifer was a participant in the Central States, Southeast and Southwest Areas Pension Fund; that he died on August 18, 1978 at the age of 59, before retirement; that he had not elected in writing the Pre–Retirement Joint and Survivor Benefit before his death, as required by the Plan administrative procedures in effect at that time; that after his death, his surviving spouse, the plaintiff, applied to the Fund for survivor's benefits; that the Fund approved her application and paid her $450.00 per month for sixty months, as prescribed by the Pre–Retirement Survivor Benefit provision of the Plan; and that the Trustees denied plaintiff's appeal for Joint and Survivor benefits based on Mr. Sandifer's failure to elect in writing the Pre–Retirement Joint and Survivor Pension Benefit before his death. The only dispute in the case is whether the election requirement in the Plan violated ERISA, so that the Trust-

ees wrongfully denied plaintiff's appeal for Joint and Survivor benefits.

The Plan in which plaintiff's husband participated specifically gave the Trustees the discretion to construe provisions, terms and regulations of the Plan. Thus, this Court can not set aside the decision of the Trustees unless that decision was an abuse of discretion.

No such abuse of discretion occurred here. The written election requirement comported with the effective ERISA provision regarding employees who continue to work past retirement age and then die before retiring. The subsequent amended plan, which required a written waiver, rather than a written election, of Joint and Survivor Benefits, does not apply retroactively to the plaintiff. Thus, the Trustees correctly denied the lifetime annuity for which plaintiff applied.

Finally, plaintiff's claim for physical pain and mental anguish damages arising out of the allegedly wrongful benefit denial is preempted by ERISA. Even if the Court concluded that plaintiff's benefits were wrongfully denied, which it does not, these extra-contractual damages would be beyond the scope of relief provided by Congress in ERISA. Thus, this claim would in any event be dismissed.

For all of the foregoing reasons, defendant's Motion for Summary Judgment is GRANTED and plaintiff's Motion for Summary Judgment is DENIED. Judgment will be entered accordingly, dismissing all of plaintiff's claims and taxing costs.