Donald A. LOWRY, Plaintiff–Appellant,

v.

BANKERS LIFE AND CASUALTY RETIREMENT PLAN, et al., Defendants–Appellees.

No. 88–1164.

United States Court of Appeals, Fifth Circuit.

Feb. 17, 1989.
Rehearing Denied April 28, 1989.

---

Boyd & Adams, Carl D. Adams, Dallas, Tex., for plaintiff-appellant.

Moore & Peterson, Stuart M. Reynolds, Jr., Jennifer Bolen–Almquist, Dallas, Tex., for defendants-appellees.

Before GOLDBERG, HIGGINBOTHAM and DAVIS, Circuit Judges.

GOLDBERG, Circuit Judge:

This appeal concerns a claim for benefits under qualified pension plans regulated by the Employee Retirement Income Security Act ("ERISA"). The case was brought under 29 U.S.C. § 1132 (1982). The district court's opinion is published at 678 F.Supp. 635 (N.D.Tex.1988).

Appellant Donald Lowry ("Lowry"), seeks additional retirement benefits based on overwrite commissions that he received in 1979 as a general insurance agent for appellee Union Bankers Insurance Company ("Union Bankers"), an affiliate of appellee Bankers Life Insurance Company ("Bankers"). Lowry argues that the members of the appellee Plan Committee violated their fiduciary duties under ERISA, 29 U.S.C. § 1104 (1982), by refusing to include the amount of the overwrite commissions in the calculation of his pension benefits. His sole claim is that certain disputed Plan language entitles him on its face to additional benefits.[1]

Lowry was an employee of Bankers Life or its affiliates from 1950 until he retired in 1986. From March 15, 1979 through December 15, 1979, Lowry acted as a general agent for Union Bankers pursuant to a general agent's contract. At all relevant times, in accordance with the Plan, Bankers made contributions based on Lowry's salary and personal production commissions. However, Bankers did not contribute to Lowry's retirement account for the overwrite commissions that Lowry earned pursuant to his general agent's contract.

As noted, Lowry depends solely on certain language in the Plan for his argument that he is entitled to additional benefits based on the overwrite commissions. The Retirement Plan in effect during the relevant time period states in part:

(h) *Compensated Employee.* The term "Compensated Employee" shall mean a person in the employ of an Employer or an Affiliate who receives Compensation. A person who acts solely in the capacity of an "Insurance Agent", or who is a trainee for that position, shall not be considered to be a Compensated Employee for the purposes of the Plan.

---

1. Appellees include the Bankers Life and Casualty Retirement Plan and the Bankers Life and Casualty Savings Investment Plan. The dispute centers on the Retirement Plan. For ease of reference, we shall refer simply to the "Plan".

(i) *Compensation.* The term "Compensation" shall mean the total currently taxable remuneration paid by the Employers and the Affiliates to a Compensated Employee for services rendered. Compensation shall also include any amount contributed at a Participant's election under a Plan that is qualified under Section 125 or 401(a) of the [Internal Revenue] Code, but not any Employer contribution determined on the basis of the contributions made at the Participant's election or otherwise. Notwithstanding the foregoing, Compensation shall not include any payments made pursuant to an insurance agent or agency contract between the Company or the Affiliate and the payee; *provided,* that subsequent to February 28, 1977, Compensation shall include remuneration paid pursuant to insurance agent or agency contracts provided that the payee, at the time of payment, is employed on the home office payroll, or as a Field Manager, or as a field office clerical employee of the Company or an Affiliate.

Lowry contends on appeal (1) that the income he received as a general agent in the form of overwrite commissions constitutes "remuneration" and "compensation" under the Plan; (2) that the income was remuneration paid "pursuant to an insurance agent or agency contract;" and (3) that he was on the "home office payroll ... of the Company or an Affiliate" at the time of remuneration.

We must fit our inquiry in this case into the well-cut garments woven by earlier opinions of this Circuit. The actions of a Plan Committee must be upheld unless a plaintiff proves that the Committee has acted in an arbitrary and capricious manner. *Dennard v. Richards Group,* 681 F.2d 306, 313 (5th Cir.1982); *Denton v. First National Bank of Waco,* 765 F.2d 1295, 1304 (5th Cir.1985). This strict standard limits excessive judicial intervention in the administration and operation of trusts. *Id.* Discretion is a touchstone of trusteeship, and we invade the province of the trustee only when he violates the proper exercise of his discretion.

In determining whether the actions of a Plan Committee are arbitrary and capricious, a district court "should engage in a two-step process. First, the court must determine the correct interpretation of the plan's provisions." *Denton,* 765 F.2d at 1304; *Dennard,* 681 F.2d at 314. "Second, the court must determine whether the Plan administrators acted arbitrarily or capriciously in light of the interpretation they gave the Plan in the particular instance." *Denton,* 765 F.2d at 1304. "[T]he trial court must focus on the evidence that was before the Plan Committee when the final benefit determination was made." *Id.* "The fact that a trustee's interpretation is not the correct one as determined by a District Court does not establish in itself arbitrary and capricious action, but is a factor in that determination. When the trustees' interpretation of a plan is in direct conflict with express language in a plan, this action is a very strong indication of arbitrary and capricious behavior." *Dennard,* 681 F.2d at 314.

Other "factors which the trial court should consider in evaluating conduct under the arbitrary and capricious standard" include (1) whether the Committee has uniformly construed the Plan; (2) whether the Committee's reading of the Plan is a "fair reading" and whether the reading is a reasonable one; and (3) whether an alternative reading would result in unanticipated costs. *Denton,* 765 F.2d at 1304, *citing, Dennard,* 681 F.2d at 314. And, "[a]long with the determination of the 'legally' correct meaning of the Plan provision in question, we also view as probative of the good faith of a trustee or administrator the following factors: (1) internal consistency of a Plan under the interpretation given by the administrators or trustees; (2) any relevant regulations formulated by appropriate administrative agencies ... and (3) factual background of the determination by a Plan and inferences of lack of good faith, if any." *Denton,* 765 F.2d at 1304 (quoting *Dennard,* 681 F.2d at 314) (additional citation omitted).

The common law looked with favor upon trustees using their discretionary

powers in good faith to solve problems arising under their guardianship. So does ERISA. While we will never abdicate our duty of review, and allow a Plan Committee to play fast and loose with the words of an instrument, we nevertheless keep our eyes firmly fixed on the arbitrary and capricious standard, keenly aware of the discretion that must necessarily be exercised by trustees.

As noted, Lowry maintains that the disputed Plan language is so clear on its face that it requires us to reverse the district court's decision and hold that the actions of the Plan Committee in this case are arbitrary and capricious. That is, Lowry believes that this is a case where the clear language of a plan stands as a factor subsuming all others in the second step of the *Dennard* test. *See Dennard,* 681 F.2d at 314–16. We disagree. The district court's discussion of the Plan demonstrates that the Plan Committee's interpretation is "reasonably deducible from the words used" and is within the "realm of reasonable interpretations of the plan." *Tulley v. Ethyl Corporation,* 861 F.2d 120, 123 (5th Cir. 1988).

Although Lowry argues that the Plan language is crystal clear on its face, we believe that the district court was correct in its belief that the meaning of the terms "compensation", "remuneration" and "home office payroll" could not be determined in a vacuum. *See Lowry v. Bankers Life and Casualty Retirement Plan,* 678 F.Supp. 635, 640–42 (N.D.Tex.1988); *cf. Leach v. FDIC,* 860 F.2d 1266, 1270 (5th Cir.1988) ("even apparently plain words ... may not accurately convey the meaning the creators intended to impart"). For example, the district court correctly found room for interpretation of the Plan in finding that the "Plan itself does not define 'remuneration' which is susceptible to different meanings." 678 F.Supp. at 640. The district court properly found that the term

"remuneration" in the disputed provision "was aimed at field managers and other agents based upon *personal production,* not commissions earned because of the production of [sub-agents to a general agent]." *Id.* at 641 (emphasis in original). Thus, the district court correctly interpreted the Plan in this case to mean that the overwrite commission income of general agents does not fall within the scope of the Plan language.[2]

This is not the case, then, where a Plan's language inexorably compels a particular interpretation and any other one is "so far removed from the realm of reasonable interpretation of the plan that we are compelled to find [the Plan Committee's determination] invalid." *Tulley v. Ethyl Corporation,* 861 F.2d 120, 123 (5th Cir.1988); *accord Matter of HECI Exploration Co.,* 862 F.2d 513, 524–25 (5th Cir.1988).

Given that the disputed Plan language in this case is not crystal clear on its face and does not exist in a vacuum, we are satisfied that the numerous factors outlined in *Denton* and *Dennard,* and applied by the district court, properly guided the district court's inquiry and support its conclusion that the actions of the Plan Committee in this case were not arbitrary or capricious under the circumstances.

For example, the district court properly found that the Committee had uniformly construed the Plan, and that inclusion of general agent overwrite commission income would result in substantial unanticipated costs to the Plan. In addition, after significant consideration, the members of the Plan Committee determined that they would jeopardize the Plan's qualified status under the Internal Revenue Code if they included Lowry's general agent overwrite commissions in a calculation of his benefits. In making this determination, they relied on counsel's interpretation of a Revenue Ruling, R.R 69–569. *See* 678 F.Supp. at 642.

2. The district court expressly concluded that the term "home office payroll" created an ambiguity which itself mandated deference to the Committee's interpretation of the disputed language. *Lowry,* 678 F.Supp. at 641–42. Although the district court failed to define the

term, this is not a fatal error under *Dennard* under the circumstances of this case because the district court was able to make a correct interpretation of the Plan based on its construction of the terms "compensation" and "remuneration."

Revenue Ruling 69–569 concerns an attorney who was employed by a corporation while receiving self-employment income. The Ruling states that the attorney, as an employee of the corporation, could participate in the plan without disqualifying it, but that his "contribution's [sic] or benefits under the plan are to be based only on the amount he receives as an employee of the corporation." Counsel, as well as the expert witness for the Plan Committee and the other appellees at the bench trial, interpreted this Ruling to mean that general agents, under the Plan involved in this case, could not participate in the plan based on their overwrite commission income, but could participate in the plan without disqualifying it based on salary and personal production income, as Lowry did in this case.

Nothing in the record suggests that the Plan Committee acted in bad faith in relying on counsel's determination. We ask only whether the Committee's reliance on counsel's reading of the Ruling was reasonable. *Denton,* 765 F.2d at 1304. We believe the Committee's actions meet this reasonableness standard.

After reviewing the determination of the Plan Committee under the circumstances of this case, in light of the factors outlined in *Dennard* and *Denton,* we hold that the Committee's determination was not arbitrary and capricious. Therefore, the judgment of the district court must be AFFIRMED.[3]

---

**3.** We hold only, and we read the opinion of the district court as holding only, that the actions of the Plan Committee under the particular circumstances of this case were not arbitrary and capricious. We find it unnecessary to reach broader questions of law under ERISA and the Internal Revenue Code such as, for example, whether the overwrite commission income earned by a general insurance agent may ever be included in a benefits calculation under a qualified pension plan without jeopardizing the qualified status of the plan.