Robert J. BATCHELOR,
Plaintiff–Appellee,

v.

INTERNATIONAL BROTHERHOOD OF
ELECTRICAL WORKERS LOCAL 861
PENSION AND RETIREMENT FUND,
Defendant–Appellant.

No. 88–4299.

United States Court of Appeals,
Fifth Circuit.

July 20, 1989.

Louis L. Robein, Jr., Gardner, Robein & Healey, Metairie, La., for defendant-appellant.

Edward J. Fonti, Lake Charles, La., D. Kent Savoie, Sulphur, La., for plaintiff-appellee.

Before THORNBERRY, GEE and POLITZ, Circuit Judges.

THORNBERRY, Circuit Judge:

The present dispute arises under 29 U.S. C. §§ 1001 *et seq.* (ERISA). Defendant/appellant International Brotherhood of Electrical Workers Local 861 Pension and Retirement Fund ("the Pension Fund") appeals the district court's holding that the Trustees of the Pension Fund ("the Trustees") miscalculated plaintiff/appellee Robert Batchelor's ("Batchelor") past service credit. In addition, Batchelor brings a claim for attorney's fees.

I. FACTS.

From 1946 through 1959, Batchelor performed maintenance work at Cities Service Refining Corporation ("Cities Service"). He obtained "Construction A membership" in the International Brotherhood of Electrical Workers Local 861 ("IBEW Local 861") in February 1947. From 1959 through 1963, Batchelor sought and obtained referrals through IBEW Local 861 for construction work with companies that later, in

supplement the record on appeal filed by the    Dysons.

442

1963, participated in an agreement creating the Pension Fund.[1] Cities Service has never contributed to the Pension Fund.

The Pension Fund calculates a participant's benefits based on the number of years of past and future service. Future service is the number of years of service after 1963—the year the Pension Fund was created—with contractors who contributed to the Pension Fund. The parties agree that Batchelor is entitled to 18.5 years of future service. Past service credit refers to years of work through 1963, i.e. before the Pension Fund existed. The parties disagree as to the requirements for receiving past service credit. Batchelor contends that past service credit is based on union membership. The Trustees argue that past service credit is only available for years of work with companies that ultimately contributed to the Pension Fund.[2]

Batchelor retired in November 1983 claiming a total of 35.5 years of past and future service credit. In January 1984, the Chairman of the Board of Trustees informed Batchelor that the Trustees had not accepted credit for Batchelor's twelve years with Cities Service.[3] Batchelor then requested a formal hearing before the Board of Trustees. In April 1984, the Trustees held a hearing to consider Batchelor's appeal. The Trustees again refused to credit Batchelor for the twelve years he was a union member employed by Cities Service. Absent the credit for these years, Batchelor's monthly retirement benefit was approximately $200 less than he expected.

The Trustees' decision was based on the fact that (1) the provision governing past service credit was never interpreted to allow people in Batchelor's position to receive past service credit for work with companies that were not signatories to the agreement creating the Pension Fund; (2) Cities Service has never paid into the Pension Fund so Batchelor should not receive credit for the years with Cities Service; (3) the language in the 1976 Pension Plan[4] concerning recovery of lost past service credits requires Construction A membership and actual work in the construction industry; (4) it would be illegal to allow union membership alone to be the sole factor in determining past service credit; and (5) Batchelor could not provide evidence that other people in his position had received past service credit for maintenance years.

In February 1985, Batchelor brought suit against the Pension Fund contesting the denial of his twelve years past service credit. The district court rendered judgment in Batchelor's favor on the grounds that the language of the 1976 Pension Plan unambiguously allowed past service credit to people in Batchelor's position and that the Trustees' interpretation was arbitrary and capricious.

## II. STANDARD OF REVIEW.

The Supreme Court recently held that a "denial of benefits challenged under 29 U.S.C. § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, —— U.S. ——, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). If the administrator or fiduciary has discretionary authority, the reviewing court should apply an abuse of discretion standard. *Id.*

In light of *Bruch*, we must determine whether the Trustees of the Pension Plan have discretionary authority to determine Batchelor's past service credits. If the

1. After 1963, Batchelor worked construction and continued his membership in IBEW Local 861. He retired in 1983.

2. The companies that were signatories to the agreement giving rise to the Pension Fund have also contributed to the Pension Fund. Thus, the terms signatory contractor and contributing contractor are used interchangeably.

3. When referring to Batchelor's "years at Cities Service," we are referring to the twelve years from 1947 through 1959 when Batchelor was a member of IBEW Local 861 and working at Cities Service.

4. There were several different Pension Plans in evidence. We have referred to the Pension Plans by the year in which they went into effect. Each Pension Plan amended and superceded the pre-existing Pension Plan.

Trustees have such authority, we must review their decision for an abuse of discretion. Under the terms of the Pension Plan, the Trustees "have full and exclusive authority to determine all questions of coverage and eligibility.... They ... have full power to construe the provisions of this Agreement, [and] the terms used herein...." Furthermore, the Trustees have the authority to "interpret the Plan and ... determine all questions arising in the administration, interpretation and application of the Plan." These provisions give broad discretionary authority to the Trustees. We, thus, review the Trustees' interpretation of the provisions governing past service credit for an abuse of discretion. *See Lowry v. Bankers Life and Casualty Retirement Plan*, 865 F.2d 692, *reh'g denied* 871 F.2d 522, 524 (5th Cir.1989) (holding that where a plaintiff contested the Committee's interpretation of terms of the Plan and the Plan Committee had "permissive authority ... to 'interpret and construe' the Savings Plan and the power 'to determine all questions of eligibility and status under the Plan,'" the proper standard of review was abuse of discretion).

## III. THE LEGALITY OF THE 1982 AMENDMENT.

Before reviewing the Trustee's interpretation for abuse of discretion, we must address a dispute concerning the validity of a 1982 amendment to the past service provision of the 1976 Pension Plan. In 1976, Article II, Section 3(1) of the Pension Plan provided that "[e]ach employee who is a participant on the Effective Date shall receive 1 unit of past service credit for each whole year of continuous and unbroken membership in the Union prior to the effective date." [5]

This provision was amended in 1982, becoming Article III, section 3.10, to explicitly limit past service credit to a participant who "either worked in Covered Employment or was available for work." [6] Under Article 3.09 of the 1982 Pension Plan, "Covered Employment" is "employment which, if performed subsequent to ... [1963], would have resulted in a contribution to the Pension Fund." The effect of this definition is to limit past service credit to work done for companies that have contributed to the Pension Fund. Because Cities Service did not contribute to the Pension Fund and because Batchelor was not available to work for a contributor to the Pension Fund, under the terms of the 1982 Pension Plan, Batchelor cannot receive credit for his years with Cities Service. [7]

### A. *Divesting.*

Batchelor argues that under the 1976 Pension Plan, he was entitled to past service credit for his years at Cities Service and that the 1982 amendment divested him of his right to these credits in violation of ERISA. Batchelor relies on *Fentron Industries Inc. v. National Shopmen Pension Fund*, 674 F.2d 1300 (D.C.Cir.1984), which held that a Pension Plan amendment violated ERISA because it divested participants without giving them an opportunity to select early retirement to avoid the divesting amendment. Divestment refers to the complete loss of the right to benefits. In the instant case, Batchelor was not denied his right to past service credit. In fact, the Trustees credited Batchelor with five years of past service for his work with contributing contractors from 1959 through 1963. Thus, Batchelor was not divested of his right to past service credit.

---

5. The 1966 Pension Plan had virtually the same provision.

6. The provision further provided that "[i]t shall be considered Prima Facie evidence that an Employee satisfied such conditions during the period he was construction "A" classification member of the Union." Although Batchelor did hold Construction A membership in the union, this is only prima facie, not conclusive, evidence that he satisfied the conditions entitling him to past service credits. The fact that Batchelor made a prima facie case does not secure his right to past service credit based on his union membership.

7. Batchelor attempted to demonstrate that he was available for work when he was at Cities Service. The evidence indicates that Batchelor was not "available for work" because he had steady employment at Cities Service.

### B. *Reducing Benefits.*

If the 1982 amendment had any effect at all, it may have reduced the level of benefits to which Batchelor was entitled by decreasing his years of credit.[8] 29 U.S.C. § 1082(c)(8)(C) provides that:

[n]o amendment ... which reduces the accrued benefits of any participant shall take effect unless the plan administrator files a notice with the Secretary [of Labor] notifying him of such amendment and the Secretary [of Labor] has approved such amendment or, within 90 days after the date on which such notice was filed, failed to disapprove such amendment.

*See also Hoover v. Cumberland, MD AREA Teamsters Pension Fund,* 756 F.2d 977, 984 (3rd Cir.), *cert. denied* 474 U.S. 845, 106 S.Ct. 135, 88 L.Ed.2d 111 (1985) (holding that ERISA "flatly prohibits reductions of accrued benefits" unless the Secretary of the Treasury grants a request to amend benefits); *Meagher v. IAM Pension Plan,* 856 F.2d 1418, 1423 (9th Cir. 1988), *cert. denied* — U.S. —, 109 S.Ct. 1943, 104 L.Ed.2d 414 (1989) (finding inoperative an amendment reducing accrued benefits that was never approved by the Secretary of the Treasury).[9] The administrator of the Pension Fund never notified the Secretary of Labor concerning the amendment to the past service provision.

The Trustees argue that the 1982 amendment did not alter any past understandings or practices concerning the calculation of past service credit and that, therefore, there was no obligation to inform the Secretary of Labor. They urge that the amendment clarified the existing interpretation that a participant could only receive past service credit for years worked for a construction industry contractor who was a signatory to the agreement that gave rise to the Pension Fund.

We cannot determine whether the amendment altered the benefits under the Pension Plan without first determining whether the 1976 Pension Plan allowed credit for past service for work with non-contributing contractors. If the 1976 Pension Plan did allow such credit, the 1982 amendment reduced benefits and is ineffective because the Trustees failed to comply with ERISA. Alternatively, if the 1976 Pension Plan limited past service credit to work with employers who were contributors to the Pension Fund, the amendment merely clarified this policy without altering the benefit levels in which case the 1982 amendment would be lawful. The legality of the 1982 amendment depends on the validity of the Trustee's interpretation of the 1976 Pension Plan. Our review, thus, begins with the 1976 Pension Plan.

### IV. PROCESS OF REVIEW.

In reviewing the Trustees' decision, a district court "should engage in a two step process. First, the court must determine the [legally] correct interpretation of the Plan's provisions. Second, the court must determine whether the Plan administrators acted arbitrarily or capriciously in light of the interpretation they gave the Plan in the particular instance." *Denton v. First National Bank of Waco,* 765 F.2d 1295, 1304 (5th Cir.1985).[10]

### A. *The Correct Interpretation.*

We are guided by *Dennard v. Richards Group, Inc.,* 681 F.2d 306, 314 (5th Cir. 1982), which instructs us to consider three factors in determining the legally correct interpretation of the Pension Plan: (1) "uniformity of construction; (2) 'fair reading' and reasonableness of that reading; and (3) unanticipated costs."

#### 1. Uniformity of construction.

Neither party has presented any evidence regarding whether the Trustees have

---

**8.** As previously discussed, the level of benefits is based on the number of years of past and future service.

**9.** These cases state that notice must be given to the Secretary of the Treasury. The statute actu-

ally requires notice to the Secretary of Labor. *See also* 26 U.S.C. § 412(c)(8)(C).

**10.** The *Denton* court used the arbitrary and capricious standard. The proper standard, as discussed previously, is abuse of discretion.

previously awarded past service credit to people with Batchelor's employment history. Because of this lack of evidence, there is no basis for us to make a finding regarding uniformity of construction of the Pension Plan.

### 2. Fair reading.

The relevant language in the 1976 Pension Plan is straightforward: "[e]ach employee who is a participant on the Effective Date shall receive 1 unit of past service credit for each whole year of continuous and unbroken membership in the Union prior to the effective date." A fair reading of this provision indicates Batchelor should receive credit for his years at Cities Service. The Trustees' interpretation is not a fair and reasonable reading of the 1976 Pension Plan.

### 3. Unanticipated costs.

In reviewing the correctness of the Trustees' interpretation, we must determine whether either of the interpretations would give rise to "substantial unanticipated costs to the Plan." *Lowry,* 865 F.2d at 695. If a given interpretation would result in such costs, that interpretation is less likely to be legally correct.

The Pension Fund's actuary testified that if the Pension Fund gave Batchelor the credit he requests, the Pension Fund would have an additional present value cost of approximately $24,000. There are other individuals in Batchelor's situation who could also receive past service credit if Batchelor prevails. Although there was extensive debate over the exact number of people in Batchelor's situation, the Pension Fund's actuary stated that "I have the feeling once the true figure, once we shovel it out, only four could receive it [referring to the credit Batchelor seeks]. It would be in the range of $100 to $150 thousand dollars." This is the most precise evidence in the record, from which we conclude that the unanticipated costs would be in the range of $124,000 to $174,000.

In determining whether the unanticipated cost is substantial, we must consider the Pension Fund's total assets. The Pen-

sion Fund is worth 9.5 million dollars. An increased future liability of $174,000 will deplete the Pension Fund by less than two percent. We do not find this to be a substantial unanticipated cost. In so holding, we recognize that an unexpected liability of $174,000 could be a substantial unanticipated cost to a fund with fewer assets.

Because the plain language of the 1976 Pension Plan would permit past service credit based on union membership, and because the Pension Fund would not face a substantial unanticipated cost if Batchelor were to prevail, we find that the legally correct interpretation of the 1976 Pension Plan is the interpretation Batchelor has presented.

### B. *Abuse of Discretion.*

Although the Trustees' interpretation departs from the clear language of the 1976 Pension Plan, our inquiry is not over. We must determine whether the Trustees' interpretation rises to an abuse of discretion. Again *Dennard* guides our inquiry holding that:

[a]long with the determination of the 'legally' correct meaning of the plan provision in question, we also view as probative of the good faith of a trustee or administrator the following factors: (1) internal consistency of a plan under the interpretation given by the administrators or trustees; (2) any relevant regulations formulated by the appropriate administrative agencies, here the IRS and Department of Labor; and (3) factual background of the determination by a plan and inferences of lack of good faith. The fact that a trustee's interpretation is not the correct one as determined by the District Court does not establish in itself arbitrary and capricious action, but it is a factor in that determination. When the trustee's interpretation of a plan is in direct conflict with express language in a plan, this action is a very strong indication of arbitrary and capricious behavior.

*Dennard,* 681 F.2d at 314.

### 1. Internal consistency.

#### a. *plan summary*

Batchelor testified that the Trustees' interpretation was inconsistent with a Pen-

sion Plan Summary distributed to participants which indicated that he would be entitled to past service credit for his years at Cities Service. Although Batchelor may be correct in his recitation of the provisions in the Summary of the Pension Plan, he failed to bring the Summary before the court and we, therefore, cannot consider his testimony regarding the Summary in reviewing the Trustees' interpretation for internal inconsistency.

### b. lost service provision

The Trustees urge that their interpretation is consistent with another provision in the Pension Plan governing lost service credits. Lost service credits are years of service that are lost because of a break in service and are later reinstated pursuant to a special provision in the Pension Plan. The 1966 and 1976 Pension Plans provided that a participant who had a break in service could receive credit for years prior to the break if, during the pre-break years, "the Participant was a Construction 'A' Classification member of Local Union No. 861 working on construction."

The Trustees urge that their ruling that a participant must have worked for a contributory contractor to receive past service credit is consistent with this break in service provision. For several reasons, we disagree. First, the Trustees cite this provision to support their argument that in order to receive past service credit Batchelor had to work for a company that supported the Pension Fund, yet the lost service provision does not state that a participant must have worked for an employer who contributed to the Pension Fund. Second, the fact that the Trustees clearly delineated that lost past service credit could only be recouped if the participant was a member of the union working construction does not mean that the same requirement applies to a participant seeking past service credit who did not have a break in service. There is no evidence to suggest that the Trustees intended these classifications to be parallel. We, thus, do not find that the

lost service provision supports a finding that the Trustees' interpretation is internally consistent.

In sum, although the Trustees could not identify language to support a finding that their interpretation complies with other provisions in the Pension Plan, there is no evidence that the Trustees' interpretation is inconsistent with any provisions in the Pension Plan.

### 2. Relevant regulations.

■ The Trustees argue that Batchelor's interpretation of the past service credit would be illegal because it would grant benefits based on union membership. The National Labor Relations Act (NLRA) provides that "[i]t shall be an unfair labor practice for a labor organization or its agents ... to cause or attempt to cause an employer to discriminate against an employee in violation of subsection (a)(3) of this section...." 29 U.S.C. § 158(b)(2). Subsection (a)(3) prohibits "discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization." 29 U.S.C. § 158(a)(3). A violation of these provisions occurs if there is "discrimination and a resulting discouragement [or encouragement] of union membership...." [11] NLRB v. Brown, 380 U.S. 278, 286, 85 S.Ct. 980, 985, 13 L.Ed.2d 839 (1965). There is no question that distinguishing between union and non-union members in determining past service credits is discriminatory; however, this discrimination has no effect on a participant's decision whether to join the union because the past service credit is based on past, not current or future, union membership. The Pension Fund does not confer any benefits based on current or future union membership. We, thus, find that Batchelor's interpretation does not give rise to a NLRA violation.

The Trustees rely on *Truck Drivers Local Union No. 807, I.B.T.,C.,W. & H v. N.L.R.B.*, 506 F.2d 1382 (2d Cir.1974) to support their contention that Batchelor's

---

**11.** Unlawful intent is also required. We need not reach this element because the Pension

Plan, under Batchelor's interpretation, does not discourage or encourage union membership.

interpretation of the Pension Plan would be illegal. *Local 807* actually supports our holding that allowing past service credit based on union membership does not violate the NLRA. In *Local 807*, the court considered whether it was discriminatory for the trustees of a pension fund to consider union membership in determining eligibility for past service credits. The NLRB argued that because people were rewarded for past union membership, "current employees could conclude ... that it would be advantageous to become and remain union members in good standing with the expectation that their membership status may be similarly rewarded in the future." The court dismissed this argument, stating that:

> it strains credulity that a trucking industry employee might be encouraged to join Local 807 in the expectation that some time, under circumstances not even apparent, much less real, some amendment of the Rules [of the Plan] might provide evidence to establish his pension credit. The possibility of any employee even thinking of such an idea or acting upon it seems utterly remote and speculative. Surely we can not predicate a finding that a party is in violation of the law upon such a gossamer-like theory.

*Id.* at 1385.

### 3. *Factual background.*
#### a. *the Trustees' justification*

Batchelor argues that it would be an abuse of the Trustees' discretion to reduce his benefits on the grounds that he did not work for an employer who contributed to the Fund because no employers paid into the Pension Fund before 1963. He alleges that he has the same right to past service credit as a union member who from 1947 through 1959 worked for a company that did not contribute to the Pension Fund before 1963. The Trustees respond that the companies that began contributing in 1963 are effectively paying for pre–1963

years of service. They further explain that, because Cities Service has never contributed to the Pension Fund, Batchelor should not receive credit for his years working at Cities Service. The Trustees' argument has merit and does not reveal an abuse of discretion.

#### b. *calculation of Batchelor's past service credit*

Records indicate that the Pension Fund's calculation of Batchelor's past service credit has been inconsistent. In 1967 or 1968, Batchelor was credited with five years of past service credit. On October 4, 1983 and May 2, 1984, the Pension Fund reported that Batchelor had no past service credit; yet on July 20, 1984, the Pension Fund credited him with 17 years of past service. These records suggest that at some point the administrators of the Pension Fund believed Batchelor was entitled to past service credit for his years at Cities Service. The Pension Fund's inconsistency in awarding past service credit and the one-time grant of such credit to Batchelor suggests the Trustees abused their discretion in denying Batchelor credit for his years at Cities Service.

#### c. *the Pension Plans and Trust Agreements*

The documents governing the Pension Fund reveal that the Trustees have not maintained a consistent definition of past service credit. Article I, section 7 of the 1963 combined Trust Agreement and Pension Plan [12] specified that " 'Past Service' shall be prior to July 28, 1963 for continuous and unbroken membership in Local Union No. 861 and working for contractors who had a signed agreement and contractors who assented to an Agreement." In 1964, this provision was moved to Article II, section 8(a).[13] In May 1966, the Trustees executed a Pension Plan providing one year of past service credit "for each whole year of continuous and unbroken member-

---

12. Originally, the Pension Plan and Trust Agreement were one document. At some point, they became separate documents.

13. Batchelor does not claim to fall within this provision. At trial, his attorney stated that "[w]e believe as the language existed prior to '82 and from and since '66 would have covered Mr. Batchelor."

ship in Local Union No. 861." The 1976 version of the Pension Plan contained similar language.

The Trustees urge that despite the clear change in the past service provision in 1966 and the retention of these provisions when the Pension Plan was revised in 1976, they always intended to limit such credit to participants who worked for contractors who contributed to the Pension Fund. Their evidence in support of this assertion consists of testimony from one of the original Trust settlors, who testified that since the Trust began in 1963, the Trustees have always intended to limit past service credit to those participants who worked construction for signatory contractors. Although the witness stated that the Trustees' interpretation was consistent, he was not a Trustee when the language was changed in 1966 and could not explain why the past service language was changed in 1966 or retained in 1976.

From this incomplete evidence, we find that the language in the original 1963 Trust Agreement and Pension Plan clearly precluded Batchelor from receiving the past service credit he now seeks. In 1966, the language was explicitly liberalized to allow such credit. In 1976, the Trustees amended the Pension Plan and left the 1966 provision regarding past service intact. We cannot imagine and no one has explained why the Trustees would delete language specifically prohibiting participants in Batchelor's position from receiving past service credit and replace it with language clearly allowing such credit if the Trustees intended the Pension Plan to limit past service credit to participants who worked for contributing companies.

In reviewing the evidence for abuse of discretion, *Dennard* instructs us that "[w]hen the trustee's interpretation of a plan is in direct conflict with express language in a plan, this action is a very strong indication of arbitrary and capricious behavior." *Dennard*, 681 F.2d at 314. In the instant case, the Trustees' interpretation is in direct conflict with the express language of the 1976 Pension Plan. Additional evidence supports a finding that the

Trustees abused their discretion in denying Batchelor past service credit based on his membership in the union. They changed the Pension Plan in 1966 to allow past service credit based on union membership. They retained this language for sixteen years even though they amended other provisions in the Pension Plan in 1976. At one point, the Pension Fund actually credited Batchelor for his years with Cities Service. The fact that the Trustees' interpretation did not conflict with other, non-past service, provisions in the Pension Plan, that the interpretation did not violate any regulations, and that the Trustees had a believable justification for their interpretation cannot overcome the overwhelming evidence that they abused their discretion in interpreting the 1976 Pension Plan to deny Batchelor past service credit for his years at Cities Service.

Because we find that pursuant to the 1976 Pension Plan, Batchelor was entitled to past service credit even though he did not work for a contributing contractor, we find that the 1982 amendment, which limited past service credit to participants who worked for signatory contractors, had the effect of reducing benefits. By failing to notify the Secretary of Labor of this amendment reducing benefits, the Pension Fund violated ERISA. Thus, the 1982 amendment is ineffective and the Trustees cannot rely on the amendment to deny Batchelor credit for his twelve years with Cities Service.

## V. ATTORNEY'S FEES.

Based on the reasoning of the district court, we deny Batchelor's request for attorney's fees.

For the foregoing reasons, we AFFIRM.