**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 00-30084

NATHAN PARKER

Plaintiff - Appellant

VERSUS

OWENS-ILLINOIS INC; OWENS-ILLINOIS HOURLY RETIREMENT PLAN;
OWENS-ILLINOIS EMPLOYEE BENEFIT COMMITTEE;
OWENS-ILLINOIS HOURLY EMPLOYEE WELFARE BENEFIT PLAN

Defendants - Appellees

Appeal from the United States District Court
For the Eastern District of Louisiana
(98-CV-201-D)

September 28, 2001

Before REYNALDO G. GARZA, STEWART, and DENNIS, Circuit Judges.

PER CURIAM:[*]

This action arises from the denial of disability retirement income benefits under a plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461. On cross-motions for summary judgment, the district court determined

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

that the administrator's interpretation of the plan was legally correct, and therefore the denial of the plaintiff's benefits claim could not constitute an abuse of discretion.  The court accordingly granted summary judgment in favor of the defendants.  Concluding that the plaintiff is entitled to the benefits for which he applied, we reverse the district court and remand for entry of judgment in conformity with our opinion.

## I.  Facts and Procedural History

Owens-Illinois, Inc., employed Nathan Parker at its New Orleans, Louisiana plant from 1961 until 1985.  In December of 1984, Owens-Illinois ceased production at its New Orleans plant, leaving only a skeleton crew on the premises.  Parker remained as part of this crew and worked in the plant's warehouse until July 24, 1985, when he suffered a disabling work-related injury.[1]  As a result of the injury, Parker received workers' compensation benefits, as well as Social Security disability payments and life insurance disability benefits.

Although warehouse operations and employment continued, Owens-Illinois closed the personnel office of the New Orleans plant

---

[1]Owens-Illinois employed Mr. Parker as a forklift operator.  His warehouse duties also required him to operate a sweeping machine known as a "retriever."  Mr. Parker was using this machine at the time of his injury.  It appears from the record that a steering malfunction caused the "retriever" to fall, with Mr. Parker in it, from a loading dock onto a railroad track.

when it terminated production there in 1984.[2] Consequently, at the time Parker was injured, there was no one available at the plant to provide him with the proper forms or to assist him in applying for disability and retirement benefits.

On December 28, 1994, over nine years after he became disabled, Parker applied to Aetna Life Insurance Company for permanent and total disability ("PTD") benefits under a group policy insured by Aetna and provided to employees as part of the Owens-Illinois Hourly Welfare Benefit Plan. Aetna denied Parker's PTD claim because the Welfare Benefit Plan required that claims for PTD benefits be filed with the insurance company within 12 months after the employee stopped active work.

In October of 1995, Parker filed a claim for disability retirement income ("DRI") benefits under the Owens-Illinois Hourly Retirement Plan. In 1983, Owens-Illinois provided its Retirement Plan participants, including Mr. Parker, with a Summary Plan Description ("SPD") that explained the eligibility criteria for DRI benefits. This booklet informed Mr. Parker as follows:

---

[2]Parker asserts that Owens-Illinois customarily filed claims for permanent and total disability benefits on behalf of injured workers, but failed do so in his case because of the plant closure. Owens-Illinois responds that the initiation of benefit claims for injured employees was never standard practice. Despite this disagreement, it is clear that Parker did not have access to the resources that would have been available to him had he been injured when the plant was fully functional. The Summary Plan Description of the Owens-Illinois Hourly Welfare Benefit Plan and the Owens-Illinois Hourly Retirement Plan states that the forms necessary to file the respective claims for benefits "are available in your Personnel Department."

3

You are eligible for disability [retirement] income benefits if you have had ten or more years of credited service and become permanently and totally disabled. You will be considered permanently and totally disabled for the purposes of this benefit if the insurance company approves your claim for permanent and total disability benefits under the Group Insurance Program.

* * *

In order to file a claim for Disability Retirement Income Benefits you must first submit a claim for permanent and total disability benefits under the Hourly Employees Group Insurance Program. You must also complete an application for retirement benefits. These forms are available in your Personnel Department.

The applicable written plan document, entitled the "Third Amended and Restated Owens-Illinois Hourly Retirement Plan," which was in effect in 1985 when Mr. Parker was injured, stated at § 7.03:

In any case of retirement on account of permanent and total disability, [1] evidenced by the award of benefits for permanent and total disability under any group insurance policy provided and administered by an Employer, if such benefits are provided by any such policy, or [2] evidenced by proof satisfactory to the Committee, if such benefits are not provided by any such policy, . . . the Committee shall direct the Trustee to pay . . . a monthly disability retirement benefit. . . .

Because the insurance company (Aetna) did not "approve" his prior claim for PTD benefits, the Owens-Illinois retirement manager found that the terms of the SPD rendered Parker ineligible for disability retirement benefits. Furthermore, after review of the Retirement Plan itself, and § 7.03 in particular, the manager concluded that since PTD benefits were provided by a group insurance policy, an award of those benefits by the insurer was an absolute prerequisite to Parker's receipt of DRI benefits. Citing

4

a conflict between the SPD and § 7.03 of the plan, Parker appealed this denial of his claim to the Retirement Plan Administrator, the Owens-Illinois Employee Benefits Committee. The Committee upheld the denial, and this lawsuit followed.

In his petition,[3] Parker challenged the denial of DRI benefits by asserting that the administrator erroneously interpreted the Retirement Plan and the SPD, and that the denial of his claim was arbitrary and capricious. After full discovery, the district court considered cross-motions for summary judgment. Concluding that the administrator's interpretation of the SPD and the plan was legally correct, the court granted summary judgment to the defendants. Parker appeals from that judgment and from the denial of his cross-motion for summary judgment.

The central issue presented by this appeal is whether Parker is legally entitled to disability retirement income benefits. Parker recognizes that approval for PTD benefits by the group insurer would automatically entitle a claimant to DRI benefits under the express terms of the Retirement Plan. Although he does not contest Aetna's denial of his PTD claim as untimely, he nevertheless maintains that the SPD permits him to establish permanent and total disability in his DRI claim through the

---

[3]Parker commenced this action in Louisiana state court. The defendants subsequently removed the case to the United States District Court for the Eastern District of Louisiana.

"ancillary proof" he submitted to the district court.[4]  We agree.

## II. Discussion

### A. *Standard of Review*

We review summary judgment de novo, employing the same standards used by the district court.  Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211, 213 (5th Cir. 1999).  Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-24 (1986); FED. R. CIV. P. 56(c).

When an ERISA plan gives its administrator the discretionary authority to determine eligibility for benefits or to construe the terms of the plan, as it does here,[5] courts accord deference to the

---

[4]Parker submitted the following items as proof of his permanent and total disability: his own affidavit; a Social Security Administration decision dated August 31, 1988, finding Parker permanently and totally disabled as of July 24, 1985, the date of his accident at work; a Joint Petition to Compromise a Worker's Compensation Claim and Order Approving Worker's Compensation Settlement, dated January 10, 1992; a June 16, 1993 correspondence from the Glass, Molders, Pottery, Plastics & Allied Workers International Union evidencing the issuance of a life insurance policy on the basis of Parker's permanent and total disability; and an Aetna Attending Physician's Statement, completed by Parker's doctor, that confirms Parker's disability status.  The defendants offered no evidence to dispute Parker's claim of permanent and total disability.

[5]The Retirement Plan states at § 10.05 that "the Committee shall have full power and authority . . . to make fair, equitable and nondiscriminatory rulings and decisions . . . on any question concerning the construction or interpretation of the Agreement and

administrator's interpretation and review it for abuse of discretion. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). See also Abraham v. Exxon Corp., 85 F.3d 1126, 1131 (5th Cir. 1996); Duhon v. Texaco, Inc., 15 F.3d 1302, 1305-06 (5th Cir. 1994).[6] "'In applying the abuse of discretion standard, we analyze whether the plan administrator acted arbitrarily or capriciously.'" Meditrust, 168 F.3d at 214 (citation omitted). In this Circuit, our inquiry proceeds in two parts. First, we must determine whether the administrator's interpretation is legally correct. In deciding this question, we consider: (1) whether the administrator has given the plan a uniform construction; (2) whether the interpretation is consistent with a fair reading of the plan; and (3) whether there will be any unanticipated costs resulting from different interpretations of the plan. Wildbur v. ARCO Chem. Co., 974 F.2d 631, 637-38 (5th Cir. 1992). The inquiry ends if the interpretation is legally correct because the administrator could not have abused its discretion in reaching the proper result. See Spacek v. Maritime Ass'n, 134 F.3d 283, 292-93 (5th Cir. 1998). But if the interpretation is legally incorrect,

the Plan."

[6]We also review the factual determinations of the plan administrator under the abuse of discretion standard. Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc., 168 F.3d 211, 213 (5th Cir. 1999). It is undisputed that the Employee Benefits Committee's factual findings were correct: Owens-Illinois maintained a group insurance policy that provided PTD benefits to qualifying individuals, and Aetna denied Parker's claim for PTD benefits.

we must then determine whether the administrator's decision constitutes an abuse of discretion. Wildbur, 974 F.2d at 637-38. In this second prong of the analysis, we look to: (1) the internal consistency of the plan under the administrator's interpretation; (2) any relevant regulations formulated by the appropriate administrative agencies; and (3) the factual background of the determination and any inferences of bad faith. Id. at 638.

## B. *Terms of the SPD Control*

Parker contends that the administrator's decision is incorrect because it ignores the plain language and meaning of the summary plan description. In Hansen v. Continental Insurance Co., 940 F.2d 971, 982 (5th Cir. 1991), this court held that

> the summary plan description is binding, and [] if there is a conflict between the summary plan description and the terms of the policy, the summary plan description shall govern. Any other rule would be, as the Congress recognized, grossly unfair to employees and would undermine ERISA's requirement of an accurate and comprehensive summary.

See also Rhorer v. Raytheon Eng'rs & Constructors, Inc., 181 F.3d 634, 640-42 (5th Cir. 1999).

Here, unlike § 7.03 of the Retirement Plan, the SPD does not explicitly state that the employee must be awarded PTD benefits under the group insurance policy in order to receive disability retirement benefits. The SPD simply provides that an employee is eligible for DRI benefits if he has "ten or more years of credited service" and "become[s] permanently and totally disabled." The SPD

8

further provides that an employee will be "considered" permanently and totally disabled if the insurance company approves his claim for PTD benefits, but does not foreclose proof of disability by other means. Finally, the SPD states that in order to file a claim for DRI benefits, the employee must submit a PTD claim and complete an application for retirement benefits.[7]

Mr. Parker has fulfilled all of these requirements. He had ten or more years of credited service, became permanently and totally disabled, filed a claim for PTD benefits, and completed an application for retirement benefits. Therefore, as the terms of the SPD are inconsistent with the terms of the Retirement Plan, the SPD controls the outcome of this case.[8] Under a fair reading of the SPD, Mr. Parker is entitled to DRI benefits.[9]

---

[7]Again, the application forms were supposed to be available to Parker in his Personnel Department. But see supra note 2 and accompanying text.

[8]In Hansen and Rhorer, we reasoned that the requirements imposed by ERISA on summary plan descriptions would be eviscerated by a rule that permits the terms of the plan or policy to control whenever they conflict with the terms of the SPD. See Rhorer, 181 F.3d at 640. "[I]f a participant has to read and understand the policy in order to make use of the summary, then the summary is of no use at all." Hansen, 940 F.2d at 981-82.

[9]Although the administrator and the district court adopted a different interpretation of the SPD, in so doing they relied heavily on the terms of the Retirement Plan. However, as Hansen clearly demonstrates, the SPD must speak for itself; the employee is not required to verify the consistency of the plan with its summary description. See supra note 8. Focusing, then, on the terms of the SPD, we find that they are unambiguous. However, to the extent that any ambiguities exist, "the rule of contra proferentem, that ambiguities in contracts are to be resolved against the drafter, must be applied when a summary plan

**C.** *The Administrator's Interpretation Was Legally Incorrect*

We stated above the three general factors considered in determining whether an administrator's interpretation of a plan is legally correct. "These factors are not particularly helpful to our analysis, however, because here we are reviewing, specifically, the plan administrator's interpretation of the summary plan description." Rhorer, 181 F.3d at 640 n.7. Therefore, while we address these considerations, we do so with particularized focus on the SPD. See id.

With reference to the first factor, Parker complains that the administrator did not treat him in a uniform manner. However, neither Parker nor the defendants presented any evidence as to whether the administrator has previously awarded DRI benefits to similarly situated plan participants. Because of this lack of evidence, there is no basis for us to make a finding regarding uniformity of construction. See Batchelor v. Int'l Bhd. of Elec. Workers Local 861 Pension & Retirement Fund, 877 F.2d 441, 444-45 (5th Cir. 1989).

Our finding that Parker is entitled to DRI benefits under a fair reading of the SPD necessarily resolves the second factor in his favor. Contrary to the administrator's interpretation and the ruling of the district court, the SPD does not clearly explain that

---

description contains an ambiguous term or requirement." Rhorer, 181 F.3d at 640-41. "Thus, ambiguous terms in summary plan descriptions are resolved in the employee's favor." Id. at 641.

a DRI applicant can <u>only</u> establish permanent and total disability if the insurance company approves his PTD claim. Absent a clear expression of this significant limitation, the SPD cannot be fairly read to prohibit Parker from proving his disability through the evidence contained in the record.

Finally, in reviewing the correctness of the administrator's decision, we must determine whether either of the interpretations would give rise to substantial unanticipated costs to the plan. <u>See</u> <u>Batchelor</u>, 877 F.2d at 445. The district court found that Parker's interpretation would eliminate any time restrictions on filing a claim for PTD benefits, thereby exposing the plan to unanticipated costs in handling stale claims. However, this concern was misguided because Parker does not seek PTD benefits. Instead, he asserts that the denial of his PTD claim as untimely does not preclude an award of DRI benefits. The SPD does not specify a time limitation for filing a DRI claim. Consequently, under pertinent federal regulations,[10] the 12-month application period for PTD benefits cannot be interpreted as a restriction on the disability retirement provisions.[11] We acknowledge that Parker

---

[10]<u>See</u> <u>infra</u> Part II.D.

[11]It is true that the SPD requires a DRI claimant to first file for PTD benefits, and the latter claim is untimely if filed beyond one year after the injured employee stops active work. However, as Parker points out, it is illogical to conclude that the employee who <u>timely</u> files a PTD claim must also apply for DRI benefits within the same one-year period. Under this strained interpretation, a worker who files the PTD claim but is still undergoing medical treatment and evaluation, and perhaps has not

11

did not file his DRI claim until 1995, and that this delay may not have been expected by Owens-Illinois. However, in light of the unique factual circumstances of this case, we are convinced that a finding for Parker will not burden the Retirement Plan with substantial unanticipated costs. As a result of the closure by Owens-Illinois of its New Orleans Personnel Department, the proper claim forms were not available to Parker in the location identified in the SPD, and no personnel officers were on hand to assist him in applying for the benefits to which he was entitled. Because these basic resources were presumably available to plan participants at other Owens-Illinois facilities, the third factor does not prevent us from adopting Parker's fair and reasonable reading of the SPD.

After considering the relevant factors, we conclude that the plan administrator's decision was legally incorrect.

### D. *The Administrator Abused its Discretion*

Having determined that the administrator's interpretation was legally incorrect, we must now decide whether the interpretation

---

yet been examined by an independent physician chosen by the insurance company, would nevertheless have to file a DRI claim even though the eligibility requirement of permanent and total disability has not been established. As for the employee who cannot declare within 12 months of his injury that his condition will never improve and that he will never rejoin the workforce, the insurance company may dismiss as untimely a PTD claim filed beyond 12 months without inquiry into the actual merits of the disability claim. Although Owens-Illinois may have intended to deprive this employee of DRI benefits even though he is permanently and totally disabled, the company did not make this intention clear in the SPD. We therefore find that the one-year limitation applies only to the PTD claim.

rises to an abuse of discretion. We previously observed the three factors relevant to this second prong of the analysis. Applying these factors to the record before us, we conclude that the administrator abused its discretion, and that the district court erred in granting summary judgment to the defendants.

Regarding the first factor, it is clear that the administrator's denial of Parker's claim did not disturb the internal consistency of the plan, since § 7.03 of the Retirement Plan provides that an employee must be awarded PTD benefits under the group insurance policy in order to recover disability retirement benefits. However, the abuse of discretion inquiry in this case is directed at the administrator's interpretation of the SPD, and not its interpretation of the plan itself. Thus, the first factor does not assist our analysis. Rhorer, 181 F.3d at 643.

As for the second factor, "ERISA requires that plan participants be provided with an accurate, comprehensive, easy to understand summary of the plan." Hansen, 940 F.2d at 980.

> A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries. . . . The summary plan description shall . . . be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.

29 U.S.C. § 1022(a). The relevant federal regulations provide that a summary plan description "must not have the effect to misleading,

13

misinforming or failing to inform participants and beneficiaries." 29 C.F.R. § 2520.102-2(b).  Also, the SPD must contain "a statement clearly identifying circumstances which may result in disqualification, ineligibility, or denial . . . of any benefits that a participant or beneficiary might otherwise reasonably expect the plan to provide. . . ."  Id. § 2520.102-3(l).  Finally, the administrative regulations expressly require that "exceptions, limitations, reductions, or restrictions of plan benefits" be clearly noted. Id. § 2520.102-2(b).

The foregoing regulations dictate that restrictive provisions, like the requirement in § 7.03 of the Retirement Plan of an award of PTD benefits under the group insurance policy, be properly disclosed in the SPD.  Rhorer, 181 F.3d at 643.  Thus, by providing Mr. Parker with a SPD that did not clearly indicate this restriction, Owens-Illinois failed to comply with its obligations under ERISA and the relevant federal regulations.  The second factor therefore points to an abuse of discretion.

The third and final consideration calls our attention to the factual background of the denial of Parker's claim and any inferences of bad faith.  The record before us contains no evidence that the defendants acted in bad faith.  However, a legally incorrect interpretation of a plan or SPD may constitute an abuse of discretion if it advances the conflicting interest of the administrator at the expense of the affected plan participant. See Wildbur, 974 F.2d at 638.  Thus, the existence of a conflict is a

14

factor to be considered in determining whether a self-interested administrator with discretionary authority abused its discretion in denying a claim. Vega v. National Life Ins. Servs., 188 F.3d 287, 297 (5th Cir. 1999). In the present case, the plan administrator, the Owens-Illinois Employee Benefits Committee, is comprised of members selected by the Chief Executive Officer of Owens-Illinois, and the Retirement Plan vests the Committee with discretionary authority.[12] Because Owens-Illinois funds the Retirement Plan,[13] the administration of the plan by a Committee consisting of the company's agents creates a potential, if not an actual, conflict of interest, which we must consider in our abuse of discretion analysis.

When Parker applied for DRI benefits, he asked the Committee to consider the relationship between his delay in filing the claim and the special circumstances surrounding the closure of the New Orleans plant. Had the Committee observed that Parker was deprived of the assistance of a personnel office and examined the merits of his claim, it would have found that Parker meets the eligibility

---

[12]Section 10.04 of the Retirement Plan provides that "[t]he Committee shall determine what and when Participants and their Beneficiaries are entitled to receive benefits hereunder, and shall advise such of the Trustees as are to make benefit disbursements hereunder, in writing, thereof and of the amount of benefits to be paid to each of them." See also supra note 5.

[13]Section 4.01 of the plan states that Owens-Illinois will "contribute to the Trustee such amounts as may be necessary, pursuant to accepted actuarial and funding methods and standards adopted by the Committee, to provide retirement and other benefits under this Plan with respect to its Participants hereunder."

15

requirements set forth in the SPD. However, the Committee never reached the issue of whether Parker is permanently and totally disabled for the purposes of DRI benefits, relying instead on Aetna's previous denial of Parker's PTD claim. In view of the Committee's failure to reach this issue, the conflicting interests of the Committee, and the unique factual circumstances of Parker's case, we find that the third factor weighs in favor of Mr. Parker.

Finding that two of the three relevant factors suggest an abuse of discretion, we conclude that the district court erred in granting the defendants' motion for summary judgment.

### III. Conclusion

Because Mr. Parker's permanent and total disability is not disputed by the defendants,[14] we find that he is entitled to summary judgment on his claim for DRI benefits. The judgment of the district court is REVERSED,[15] and we REMAND for entry of judgment in favor of Mr. Parker in accordance with this opinion.

---

[14]See supra note 4.

[15]Owens-Illinois argues that we should affirm the district court's grant of summary judgment in its favor on the alternative ground that Parker's claim for disability retirement benefits is barred by prescription. However, our circuit precedents clearly establish that Parker's claim for benefits under ERISA is governed by Louisiana's ten-year prescriptive period for personal actions. See Hall v. Nat'l Gypsum Co., 105 F.3d 225, 230 (5th Cir. 1997). Moreover, a cause of action under ERISA accrues when a request for benefits is denied. Id.; Paris v. Profit Sharing Plan for Employees of Howard B. Wolf, Inc., 637 F.2d 357, 361 (5th Cir. 1981). Because Parker's request for benefits was denied 1995, his suit, which he instituted in 1997, is not time-barred.

16